FAULK et al. v. BUENA VISTA BURIAL PARK ASS'N et al.

No. 4094.

Court of Civil Appeals of Texas. El Paso.

June 5, 1941.

H. L. Faulk, of Brownsville (F. T. Graham, of Brownsville, of counsel), for appellants.

West & Hightower, of Brownsville, for appellees.

PRICE, Chief Justice.

This is an appeal from a judgment of the District Court of Cameron County. Buena Vista Burial Park Association, a corporation, and R. A. and Lal Hightower, as plaintiffs, were awarded an injunction against Ebony Lawn, Inc., a corporation, and H. L. Faulk, as trustee, perpetually enjoining the defendants from establishing and maintaining a cemetery on 16.5 acres of land lying partly at least within the city limits of Brownsville, and adjacent to a tract whereon a cemetery was maintained since about the year 1915 by the plaintiff, Buena Vista Burial Park Association.

It is unnecessary to summarize the pleadings of the parties. Suffice it to say same were sufficient to raise all of the questions hereinafter discussed. A jury was impaneled in the trial of the case, but thereafter the case by mutual agreement was withdrawn from the jury and submitted to the judge. The judge, upon the request of appellants, filed findings of fact and con-

clusions of law. There is no statement of facts in the record, and the case is before us on these findings and conclusions.

The findings of fact summarized are, that the City of Brownsville had, according to the 1930 Census, and likewise the 1940 Census, a population of not less than 5,000 nor more than 25,000; that appellees R. A. and Lal Hightower own a residence in the City of Brownsville; their co-plaintiff, Buena Vista Burial Park Association, is a cemetery corporation, owning and operating its cemetery since 1915 within the corporate limits of the City of Brownsville, and owns a residence upon its cemetery park occupied as such by its superintendent; that the lands upon which appellants seek to establish the new cemetery lie adjacent to the tract upon which appellee corporation operates its cemetery; neither of the appellants are now using or maintaining, nor have they or either of them ever used or maintained, within less than one mile from the incorporated line of the City of Brownsville any cemetery; that said appellants a short time before the filing of the suit by appellees commenced clearing the land in question for the purpose of establishing a new cemetery thereon; that this tract is in a sparsely settled section of the City and about one-fourth of a mile from the nearest residence, except the residence occupied by the superintendent of the appellee corporation; the appellant corporation has had approved by the City Commission of Brownsville a map and plat dividing the land into lots, blocks and drives and dedicating the same as a cemetery; the residential and industrial development of Brownsville at the present time is away from the land; that there is little likelihood that the vicinity within one-fourth of a mile of the defendants' land will become thickly populated; that there are two cemeteries in Brownsville, one owned by the City which is filled to capacity, the other is owned by the appellee corporation, and is operated as a perpetual care cemetery; that there is a public need for the establishment of another cemetery available to poorer people.

Appellees rely upon Articles 930 and 930a, Vernon's Annotated Civil Statutes, as justifying and sustaining the judgment entered by the trial court.

Appellants concede that according to the text of the sections in question the establishment of the new cemetery by them is

rohibited. They assert, however, that uch sections are violative of the Constitution, and hence ineffective.

Articles 930 and 930a are as follows:

"Art. 930. Location of Cemetery

"It shall be unlawful for any person, company, corporation, or association to establish or use for burial purposes any grave yard or cemetery, or any mausoleum and/or crematory except in a cemetery heretofore established and operating, located within or within less than one mile from the incorporated line of any city of not less than five thousand (5,000) nor more than twenty-five thousand (25,000) inhabitants according to the last preceding Federal Census, or within, or within less than two (2) miles from, the incorporated line of any city of not less than twenty-five thousand (25,000) nor more than fifty thousand (50,000) inhabitants according to the last preceding Federal Census, or within, or within less than three (3) miles from the incorporated line of any city of not less than fifty thousand (50,000) nor more than one hundred thousand (100,000) inhabitants, according to the last preceding Federal Census, or within, or within less than four (4) miles from the incorporated line of any city of not less than one hundred thousand (100,000) nor more than two hundred thousand (200,000) inhabitants, according to the last preceding Federal Census, or within, or within less than five (5) miles from, the incorporated line of any city of not less than two hundred thousand (200,000) inhabitants according to the last preceding Federal Census; provided that where cemeteries have heretofore been used and maintained within the limits hereinabove set forth, and additional lands are required for cemetery purposes, land adjacent to said cemetery may be acquired by the cemetery association operating such cemetery, to be used as an addition to such cemetery, and the use of said additional land for such purposes shall be exempt from the provisions of this Section."

"Art. 930a. Abatement of Nuisances

"The maintenance or location and use of any grave yard or cemetery in violation of the provisions of this Title are declared to be a nuisance, and the governing body of the city, if said cemetery is within, or within less than five (5) miles from, a city of more than twenty-five thousand (25,000) inhabitants, according to the last preceding Federal Census, or the District Attorney, if said cemetery is not within, or within five (5) miles of, a city of more than twenty-five thousand (25,000) inhabitants, according to the last preceding Federal Census; or any person owning a residence in or near the town or city in which, or in such proximity as specified in Article 930 hereof to which, such grave yard or cemetery is located may maintain an action in the Courts to abate such nuisance and to enjoin its continuance, and if it appears that said nuisance exists or is threatened in violation of this Act, a perpetual injunction shall be granted against parties guilty of such nuisance. Whenever any old cemetery for which a perpetual care and endowment fund has not been regularly and legally established, is so neglected as to be offensive to the inhabitants of the section surrounding same, it may likewise be abated and its continuance enjoined. If such cemetery be located within the city limits of an incorporated city or town, the governing body thereof may authorize the removal of all bodies, monuments, tombs, etc., therein to a perpetually endowed cemetery as defined in this Act."

Appellants' position is that said articles violate Sections 3, 19 and 26 of Article I of the Constitution, Vernon's Ann.St. and is likewise violative of the due process of law clause of the Federal Constitution, Amendment 14. The sections of Article I involved are as follows:

"Sec. 3. All free men, when they form a social compact, have equal rights, and no man, or set of men, is entitled to exclusive separate public emoluments, or privileges, but in consideration of public services."

"Sec. 19. No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land."

"Sec. 26. Perpetuities and monopolies are contrary to the genius of a free government, and shall never be allowed, nor shall the law of primogeniture or entailments ever be in force in this State."

The concrete question here presented is: May the State, in the exercise of police power, forbid the establishment and maintenance of a cemetery within or within one mile of the boundaries of a city of 5,000 inhabitants and not more than 25,000? It is elementary that in the exercise of the police power the State may enact legislation reasonably tending to pro-

mote the health, comfort or welfare of the public. However, the extent of this power is not unlimited. Such power must be exercised in conformity to the limitations prescribed by the Constitution. All the powers of government are subject to the Bill of Rights. Article I, Section 29, is as follows: "To guard against transgressions of the high powers herein delegated, we declare that everything in this 'Bill of Rights' is excepted out of the general powers of government, and shall forever remain inviolate, and all laws contrary thereto, or to the following provisions, shall be void."

■ This section is so plain that construction thereof is unnecessary. Travelers' Ins. Co. v. Marshall, 124 Tex. 45, 76 S.W. 2d 1007, 96 A.L.R. 802.

■ That the matter of the location and regulation of the maintenance of cemeteries comes within the scope of the police power finds recognition in the decisions, both State and Federal. Likewise it seems well established that a cemetery as such is not a nuisance per se. Dunn v. City of Austin, 77 Tex. 139, 11 S.W. 1125. Article 930a does not attempt to declare a cemetery as such a nuisance. It is a cemetery located within or within a specified distance from the boundaries of the cities named that is so declared. By the terms of the law a cemetery established and dedicated at the time of the effective date of the law is exempted. The statute law relating to cemeteries was revised and rewritten at the Second Called Session of the Forty-third Legislature in 1934. The regulation seems comprehensive and complete.

■ It fairly appears from the law its clear purpose was to prevent the future establishment of cemeteries within the corporate limits of the cities specified, but to permit the maintenance and regulated expansion of cemeteries then established within the corporate limits of cities. Intrinsic in the law is a contradiction—a cemetery established in the future is declared a nuisance; an existent cemetery is not such. We are unable to perceive any valid reason for such distinction. In this respect an established cemetery and one to be established in the future would, we think, be the same. The distinction, however, may have been made out of regard for the religious and sentimental feelings of a large body of the public. Thus was avoided the disinterment of the dead, the privilege was conferred of burial in the same plat of ground in which other members of the family had been theretofore buried. Furthermore, we think that it was done in recognition of the property rights of those who had theretofore dedicated their property to cemetery purposes. Until this dedication had been annulled it was at all times a limitation on the use of the property. The law placed a mandatory limitation on the use of same for other than cemetery purposes. By virtue of the law the property was dedicated to a public use just as effectively as if it had been condemned for the cemetery. Even though the corporation owning the land be organized for profit, it is a quasi public corporation. Oakland Cemetery Co. v. People's Cemetery Ass'n, 93 Tex. 569, 57 S.W. 27, 55 L.R.A. 503; Johnson v. Cedar Memorial Park Cemetery Ass'n, Iowa, 295 N.W. 136.

The Legislature might have decided that the public welfare would be best subserved by limiting the amount of land that might be so dedicated to cemetery purposes within and near a city. As to established cemeteries, their effect on the character and growth of the city had, it was perhaps considered, been in a large measure determined. A decent and careful regard of existing conditions and rights in a plan adopted for the future development of the cities coming within the law is evidenced. Even though the State, in the exercise of the police power, at times may destroy the value of property, it is to be avoided if possible—justice should be the aim of all legislation.

Looked at from appellants' standpoint this legislation gives to appellees an exclusive privilege to sell burial lots within the city and debars appellants from selling lots in a location practically identical with that in which appellee corporation may sell lots. From appellees' standpoint no more than justice is achieved in allowing them to sell the remainder of their property which they have already dedicated to public purposes.

■ But it is urged that appellees may acquire the property of appellants and sell burial lots therefrom, and the law denies this right to appellants. It is therefore discriminatory. This question we have not before us. If the proviso in Article 930 conferring this privilege is invalid, it does not necessarily invalidate the entire law. A perusal of the law demonstrates that its purpose was not to establish an exclusive

privilege in favor of existing cemeteries and their owners. If in a measure this is done, it is not the main purpose of the law. We do not mean to hold that such proviso is unconstitutional, but that to the controversy as here developed, even though it might be, it is not material. As to its constitutionality or unconstitutionality we express no opinion.

Article 931b, Vernon's Annotated Civil Statutes, very specifically provides that the provisions of the law are not interdependent.

The fact that by the express terms of the article it is applicable only to cemeteries to be established in the future does not in our opinion render the law unconstitutional. Scott v. Champion Bldg. Co., Tex.Civ.App., 28 S.W.2d 178, 179.

If appellant cannot devote its lands to cemetery purposes, appellee can devote its land to that purpose only. This limitation and lack of limitation on use seems to us to be a distinguishing feature between the situation of the adverse parties to this litigation.

In the case of City of Austin v. Austin City Cemetery Association, 87 Tex. 330, 28 S.W. 528, 530, 47 Am.St.Rep. 114, the court had before it an ordinance of the City of Austin declaring in substance it to be unlawful for any person to bury, or cause to be buried, or to in any manner aid or assist in the burial of a dead body of any human being, within the corporate limits of the City of Austin, north of the Colorado River, except in the State cemetery, the Mount Cavalry cemetery, and in the cemetery theretofore established by ordinances of the City and designated as the Austin City cemetery. This case was before the court on certified questions. One of these questions was: "Is the ordinance in question void on the ground that it is unjust and unreasonable, or that it deprives the appellee of its rights or property without due process of law?"

To this question the Supreme Court responded, in substance: "The ordinance in question is not void upon its face; nor can we say that it can be declared void, in view of the meager statement of facts submitted with the question. The presumption is that the ordinance is valid. The mere fact that but three cemeteries are designated in which dead bodies of people can be buried, and the further fact that the city limits north of the river embrace about 4500 acres of land, do not, of

themselves show an unreasonable restriction upon the right of burial. * * *"

It is to be borne in mind that the court was there dealing with power delegated by the Legislature to a municipal corporation. in that case the Supreme Court was considering an ordinance that vested exclusive rights and restricted the use of property in practically the same manner that is done by the law we have under consideration here.

Urged against that ordinance was that it was partial and discriminatory, an attempt to create, and in effect did create, a monopoly; that it was unreasonable and an unwarranted invasion of the rights guaranteed to the citizen to use his property as he sees fit so long as such use is lawful and not injurious to the comfort, health and safety of the public.

There is room, we think, for the reasonable belief that the establishment of a cemetery within or in close proximity to a city of 5,000 inhabitants or more is not conducive to the welfare of the community. When the Legislature passed the act it was not laying out a plan for the establishment of future cities; the plan was for the orderly development of existing cities, many of which, no doubt, had cemeteries within their corporate limits. It cannot be denied that it would be other than detrimental to the welfare of a city to have too great a portion of the city devoted to cemeteries. The police power of the State may be exercised to regulate, and, where appropriate or necessary, prohibit, the use of property for certain purposes in aid of public health, morals, safety and general welfare.

Zoning ordinances have been sustained under this power. Lombardo v. City of Dallas, Tex.Civ.App., 47 S.W.2d 495, affirmed, 124 Tex. 1, 73 S.W.2d 475. Thereby activities lawful in themselves are not prohibited. The exercise of rights is merely regulated. In fact the limitation of use confers rights and facilitates their enjoyment. If you may not erect a filling station on your property, your next door neighbor may not do so on his. Comfortable enjoyment of property is thus promoted.

We can see. no difference in character in the features of the act under discussion from a zoning ordinance. Burial of the dead may not be prohibited and may not be unreasonably restrained. On the

other hand, the place of burial in a particular locality may be reasonably regulated. In our opinion, as applied to the particular case, there is nothing unreasonable or arbitrary in the act in question.

The judgment of the trial court is affirmed.