**David OAKLEY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 367–91.**

Court of Criminal Appeals of Texas, En Banc.

April 22, 1992.

Michael B. Charlton, on appeal only, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., and Alan Curry & Kim Ogg, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

McCORMICK, Presiding Judge.

Appellant was convicted in a trial by jury of the felony offense of aggravated robbery. See V.T.C.A., Penal Code, Section 29.03. After finding two enhancement paragraphs to be true, the jury assessed punishment at ninety-nine years' confinement in the Institutional Division of the Texas Department of Criminal Justice. The Fourteenth Court of Appeals affirmed appellant's conviction in a published opinion. *Oakley v. State*, 807 S.W.2d 378 (Tex. App.—Houston [14th Dist.], 1991). We granted appellant's petition for discretionary review to determine whether the Court of Appeals erred by holding that the "parole charge" instruction, as given by the trial court pursuant to Article 37.07, Section 4(a) of the Texas Code of Criminal Procedure, complies with Sections 13, 19 and 29 of Article I of the Texas Constitution.[1] We shall affirm.

At the punishment phase of appellant's trial, his counsel objected to the court instructing the jury on the operation and effect of parole laws. The court, however, overruled appellant's objections and instructed the jury pursuant to Article 37.07, Section 4(a).[2] Appellant now contends that: (1) this Court's opinion in *Rose v.*

---

1. Although appellant argues in his brief that the submission of this instruction on the operation and effect of the parole laws violates the "due process" clause of the Fifth and Fourteenth Amendments to the United States Constitution and he partially based his objection at trial on these grounds, appellant did not raise this contention in his petition for discretionary review. Therefore, we did not grant review of appellant's federal constitutional contentions and will not now address them.

2. Article 37.07, Section 4(a) states:
"In the penalty phase of the trial of a felony case in which the punishment is to be assessed by the jury rather than the court, if the offense of which the jury has found the defendant guilty is listed in Section 3g(a), Article 42.12, of this code or if the judgment contains an affirmative finding under Section 3g(a)(2), Article 42.12, of this code, unless the defendant has been convicted of a capital felony the court shall charge the jury in writing as follows:
"Under the law applicable in this case, the defendant, if sentenced to a term of imprisonment, may earn time off the period of incarceration imposed through the award of good conduct time. Prison authorities may award good conduct time to a prisoner who exhibits good behavior, diligence in carrying out prison work assignments, and attempts at rehabilitation. If a prisoner engages in misconduct, prison authorities may also take away all or part of any good conduct time earned by the prisoner.
"It is also possible that the length of time for which the defendant will be imprisoned might be reduced by the award of parole.
"Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served equals one-fourth of the sentence imposed or 15 years, whichever is less, without consideration of any good conduct time he may earn. If the defendant is sentenced to a term of less than six years, he must serve at least two years before he is eligible for parole. Eligibility for parole does not guarantee that parole will be granted.
"It cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant if he is sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.
"You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant."
Article 37.07, Section 4(a), V.A.C.C.P.
The charge that was given in appellant's case tracked the statute verbatim.

*State*, 752 S.W.2d 529 (Tex.Cr.App.1987), correctly held that the parole instruction of Article 37.07, Section 4(a) violates the "due course of law" provisions in Article 1, Sections 13 and 19 in the Texas Constitution, and (2) the amendment of Article IV, Section 11 of the Texas Constitution failed to correct this problem because Article I, Section 29, makes the provisions in Article I, i.e., the Bill of Rights, supersede all other provisions in the Constitution.

In *Rose*, this Court declared that Article 37.07, Section 4(a), and the parole instruction that it mandated, was unconstitutional: specifically, the statute and its charge were violations of the separation of powers provision in Article II, Section 1, and the due course of law provisions in Article I, Sections 13 and 19, as provided for in the Texas Constitution.[3] *Rose v. State*, 752 S.W.2d at 552–553, n. 2 (Opinion on Court's Own Motion for Rehearing adopting these conclusions from Judge Clinton's original opinion) (plurality opinion). Thus, when the *Rose* opinion became final in November, 1988, it effectively voided Article 37.-07, Section 4(a) and rejected the use of jury instructions on parole. See *Ex parte Granviel*, 561 S.W.2d 503, 515 (Tex.Cr.App. 1978) (power to determine validity of statutes rests with courts). Appellant's case, however, was tried on May 16, 1990, after the re-enactment of Article 37.07, Section 4, pursuant to the amendment of Article IV, Section 11(a) of the Texas Constitution.

Article IV, Section 11(a) of the Texas Constitution was amended to provide:

"The Legislature shall by the law establish a Board of Pardons and Paroles and shall require it to keep record of its actions and the reasons for its actions. The Legislature shall have authority to enact parole laws *and laws that require or permit courts to inform juries about* the effect of good conduct time and eligibility for parole or mandatory supervision on the period of incarceration served by a defendant convicted of a criminal offense.*" (Emphasis for the portion added by constitutional amendment).

See Tex.S.J.Res. 4, 71st Leg., 1989 Tex. Gen.Laws 6414, and Act of May 17, 1989, Ch. 103, § 1, 1989 Tex.Sess.Law.Serv. 442 (Vernon). This amendment clearly authorized the Legislature to enact laws that permit or require courts to inform juries about the effect and operation of parole laws. In fact, in 1989 the Bill Analysis for Senate Joint Resolution No. 4, the precursor to the amendment in Article IV, Section 11(a), stated that the purpose for the amendment was to "establish a constitutional basis for any legislative efforts to provide courts with a jury charge regarding good conduct time and parole." Thus, when the Legislature re-enacted Article 37.07, Section 4, in 1989, it did so pursuant to express constitutional authority.

█ The Constitution of Texas is the fundamental law of the State, i.e., the supreme law of the land. *Texas National Guard Armory Board v. McCraw*, 132 Tex. 613, 126 S.W.2d 627, 634 (1939). The people of Texas have the sole power to amend or change any provision of the Constitution. *Stephens v. State*, 138 Tex.Crim. 43, 133 S.W.2d 130, 131 (App.1939). By amending the Constitution, the people express their will or intent to change the fundamental law, and those who are called on to construe the Constitution should not thwart the will of the people by construing it differently from its plain meaning. *Cramer v. Sheppard*, 140 Tex. 271, 167 S.W.2d 147, 154 (1942). An amendment then becomes just as much a part of the fundamental law as any section originally

**3.** The Court found in *Rose* that the executive branch, through the Board of Pardons and Paroles, has exclusive authority over parole, but the jury instruction enacted by the Legislature in Article 37.07 allowed jurors to consider the existence of parole in assessing punishment. Therefore, Article 37.07 was an unconstitutional attempt by the Legislature to direct the judiciary to interfere with the executive power. *Rose v. State*, 752 S.W.2d at 534–535. The Court also determined that Article 37.07 violated the due course of law provisions in Article I, Sections 13 and 19, because the jury instruction it mandated created a "risk that punishment [would] be based on extraneous considerations [and that] is intolerable in a society that constitutionally demands concepts of fundamental fairness be honored in its criminal justice system." *Id.* at 537.

adopted and its effect is the same as if the amendment had been originally incorporated in the Constitution. *Collingsworth County v. Allred,* 120 Tex. 473, 40 S.W.2d 13, 15 (1931).

Consequently, when Texas voters approved the amendment to Article IV, Section 11(a) of the Texas Constitution on November 7, 1989, that amendment became part of the fundamental law of Texas with the same effect as if it had been adopted as part of the Constitution originally adopted in 1876. Moreover, by so explicitly changing the fundamental law, the people clearly articulated their will or intent that the Legislature be authorized to draft laws permitting trial courts to inform juries about the operation and effect of parole laws. It is apparent, and appellant concedes, that the amendment cured the "separation of powers" taint identified in *Rose.*

But appellant argues that the amendment of Article IV, Section 11(a) did not address the "due course of law" problem identified in *Rose.* Specifically, he contends that since Article I, Section 29 of the Constitution mandates that provisions in Article I, the "Bill of Rights," supersede all other provisions of the Constitution, the parole jury charge is unconstitutional. We disagree.

■ It is well established that the Constitution must be read as a whole, so as to give effect to each and every provision. *Clapp v. State,* 639 S.W.2d 949, 951 (Tex. Cr.App.1982). No part of the Constitution should be given a construction which is repugnant to express authority contained in another part, if it is possible to harmonize the provisions by any reasonable construction. *Collingsworth County v. Allred,* 40 S.W.2d at 17. Where there is irreconcilable inconsistency between an amended provision and the Constitution as originally adopted, this Court has announced two rules of constitutional construction to help determine which controls: (1) specific provisions control general provisions, and (2) the provision adopted later in time will be given controlling effect, it being the last expression of the sovereign will

of the people. *Clapp v. State,* 639 S.W.2d at 952.

■ When these simple rules of construction are applied to the alleged conflict between the constitutional provisions in Article I, Sections 13 and 19, and Article IV, Section 11(a), the "due course of law" taint is clearly removed from Article 37.07, Section 4(a). First, the provision in Article IV, Section 11(a), authorizes the Legislature to draft laws permitting jury instructions on parole. Thus, it is a "specific" provision and should be given controlling effect over the more "general" provision in Article I, which universally guarantees that no citizen shall be deprived of life, liberty, or property, except by due course of law. Second, the sweeping due course of law provision was adopted in the first Texas Constitution and has continued as a part of all subsequent Constitutions. Article IV, Section 11(a) was amended in 1989; hence, it should prevail as the last expression of the sovereign will of the people.

Appellant, however, would have us ignore these traditional rules for construing the Constitution and find that the *Rose* due course of law problem was not resolved by amending Article IV, Section 11(a). Appellant contends that Article I, Section 29, of the Texas Constitution mandates that the due course of law provisions must control because the amendment did not modify or address Article I, Sections 19 or 13, and the constitutional provisions are now in conflict.

Article I, Section 29, of the Texas Constitution states that:

"To guard against transgressions of the high powers herein delegated, we declare that *everything in this "Bill of Rights" is excepted out of the general powers of government, and shall forever remain inviolate, and all laws contrary thereto,* or to the following provisions, *shall be void.*" (Emphasis added).

Appellant construes the emphasized language to mean that any section of the Bill of Rights supersedes other provisions of the Constitution unless directly amended by the people. We disagree with appellant's construction.

First, appellant completely ignores the phrase in Section 29 that says "all laws contrary [to the Bill of Rights], *or to the following provisions,* shall be void." (Emphasis added). This language cogently states that laws contrary to Article I, as well as the provisions following Article I, are void. Thus, Article I, Section 29, simply means that any law contrary to the Texas Constitution—any provision of the Constitution—must fail. See Braden, *The Constitution of the State of Texas: An Annotated and Comparative Analysis* (1977) at 85–86 (Section 29 was presumably a closing flourish to emphasize the Texas Bill of Rights and despite strong language seems to mean nothing at all.).[4]

Second, although appellant cites to several cases for authority to support his interpretation of Section 29, none of the cases interpret Article I, Section 29, as compelling the supremacy of Article I over other specific constitutional provisions.[5] In fact, we could not find a case that addresses this precise issue, *i.e.,* the effect of Article I, Section 29, on a conflict between a provision in the Bill of Rights and another specific constitutional provision.

In *Clapp v. State,* supra, Article I, Section 29 was not argued. *Clapp,* however, did involve a conflict between constitutional provisions in Article I, Section 11a, and Article 5, Sections 5 and 6. In resolving this conflict, we determined that a provision's mere position in Article I did not give it controlling effect over other constitutional provisions; rather, we stated that courts *"should avoid a construction (of constitutional provisions) which renders any pro-*

*vision meaningless or inoperative and must lean in favor of a construction which will render every word operative,* rather than one which may make some words idle and nugatory." *Clapp v. State,* 639 S.W.2d at 951, adding material in parenthesis and citing *Hanson v. Jordan,* 145 Tex. 320, 198 S.W.2d 262, 263 (1946), citing 11 Am.Jur., page 665, Section 55 (emphasis added). This language clearly indicates that this Court intends to follow the historical tradition of reading and construing the Constitution as a whole and not piecemeal as appellant has argued. Furthermore, we have determined that all constitutional provisions are subject to reinterpretation. *Ex parte Smith,* 548 S.W.2d 410, 413 (Tex.Cr. App.1977). "[N]either the substantive nor the procedural criminal law of this State is forever frozen" when a constitutional amendment is adopted. *Id.* at 413.

■ Therefore, we hold that Article I, Section 29, does not mandate that provisions in Article I of the Texas Constitution supersede all other constitutional provisions. When we apply the traditional canons of constitutional construction, we find that the amendment to Article IV, Section 11(a), removed the due course of law, as well as the separation of powers, constraints that plagued former Article 37.07, Section 4, V.A.C.C.P.

In appellant's case, the trial court instructed the jury using the language of Article 37.07, Section 4(a). See footnote 2, supra. We now hold that the Court of Appeals did not err by decreeing that the "parole" instruction given by the trial court

**4.** Appellant also contends in a footnote in his brief that Article I should prevail over other constitutional sections because its placement at the beginning of the Texas Constitution, in contrast to the U.S. Bill of Rights, which was drafted merely as an amendment to the United States Constitution, represents an affirmative grant of power overriding powers accorded the government in the other provisions of the Constitution. Appellant cites us to no controlling authority and we find this argument to be without merit.

**5.** Appellant cites to several cases for this authority, but we note at the outset that all of appellant's cases involve resolution of conflicts between the Constitution and legislative or munic-

ipal laws; none of appellant's cited authority discusses a conflict between two constitutional provisions. See *Faulk v. Buena Vista Burial Park Ass'n,* 152 S.W.2d 891 (Tex.Civ.App.—El Paso, 1941) (police power restricted by constitutional Bill of Rights); *Murphy v. Phillips,* 63 S.W.2d 404 (Tex.Civ.App.—San Antonio, 1933 app. dism'd) (police power and resulting civil moratorium statute cannot violate constitutional rights); *Spann v. City of Dallas,* 111 Tex. 350, 235 S.W. 513 (1921) (interpreting city ordinance); *Fazekas v. University of Houston,* 565 S.W.2d 299 (Tex.Civ.App.—Houston [1st Dist.], 1978) (police power and resulting statute cannot violate constitutional rights, guarantees, privileges, and restraints).

pursuant to Article 37.07, Section 4(a), V.A.C.C.P., conformed to the constitutional mandate of due course of law in Article I, Sections 13 and 19. Accordingly, the judgment of the Court of Appeals is affirmed.

BAIRD, Judge, concurring on appellant's petition for discretionary review.

Appellant contends that Article IV, § 11(a) violates the due course of law protections of Art. I, §§ 13 and 19, therefore, the "parole charge" provided for by Tex. Code Crim.Proc.Ann. art. 37.07, Sec. 4(a) is unconstitutional. In support of this argument, appellant relies on *Rose v. State*, 752 S.W.2d 529, 552, n. 2 (Tex.Cr.App.1987) (Opinion on Court's Own Motion for Rehearing) [1] and Article I, § 29. Section 29 provides:

§ 29. Provisions of Bill of Rights excepted from powers of government; to forever remain inviolate

Sec. 29. To guard against transgressions of the high powers herein delegated, we declare that everything in this "Bill of Rights" is excepted out of the general powers of government, and shall forever remain inviolate, and all laws contrary thereto, or to the following provisions, shall be void.

Further support for appellant's position is found in the Interpretive Commentary.

This section, in excepting everything in the bill of rights out of the general powers of government and stating such rights included therein are to remain inviolate, places these rights beyond the power of the state government to usurp: it reserves these rights to the people.

As such, the basic underlying theory of bills of rights is set out, to the effect that certain rights are inalienable, that man is not capable of divesting himself or his posterity of them even by consent.

Article I of the Texas Constitution enumerates these inalienable rights and Section 29 demonstrates that they are not delegated by the people to their government, and, furthermore, any infringement by the government thereof is void.

At first glance, appellant's argument appears well founded. However, as the majority correctly notes, there is authority from this Court contrary to appellant's position. In *Clapp v. State*, 639 S.W.2d 949, 951–952 (Tex.Cr.App.1982) we were asked to resolve the conflict between Art. I, § 11(a) and Art. V, §§ 5 and 6. To do so, we applied the general rules of constitutional construction adopted by the Texas Supreme Court more than a century ago. *See, Erwin v. Blanks*, 60 Tex. 583, 585 (Tex.1884); *Gulf, C. & S.F. Ry. Co. v. Rainbolt*, 67 Tex. 654, 4 S.W. 356, 357 (Tex.1887); *Collingsworth County v. Allred*, 120 Tex. 473, 40 S.W.2d 13, 15 (1931); *and Jones v. Williams*, 121 Tex. 94, 45 S.W.2d 130, 137 (Tex.1931). These rules provide: 1) The Constitution is to be construed as a whole, so as to give effect to every provision, and, if possible, to harmonize the provisions; 2) Different constitutional sections, amendments, or provisions which relate to the same subject matter should be construed together and considered in light of each other; 3) In construing conflicting provisions, the later in point of adoption will be given controlling effect; and, 4) In construing conflicting provisions the more general provision must yield to the more specific provision. *Clapp*, 639 S.W.2d at 951–952.

Today, after applying those rules of construction, the majority finds Art. IV, § 11(a) was adopted at a later point in time and is more specific than Art. I, §§ 13 and 19. *Oakley v. State*, 830 S.W.2d 107, 110 (Tex.Cr.App.1992). Therefore, the majority concludes the parole charge provided for by Art. 37.07, Sec. 4(a) is constitutional.

---

**1.** *Rose v. State*, 752 S.W.2d 529, 552, n. 1 (Tex.Cr.App.1987) (Opinion on Court's Own Motion for Rehearing) states:

2. Those judges joining this portion of the opinion ascribe to the conclusions expressed by Judge Clinton in our original opinion, that Article 37.07, § 4(a) violates the separation of powers provision, Article II, § 1, *and the due course of law provisions, Article I, §§ 13 and 19, of the Texas Constitution.* (Emphasis added). That portion of the opinion was joined by a majority of the Court.

Because the majority does not wish to re-examine the rationale behind those rules of constitutional construction when Art. I, § 29 is implicated, I am bound by the doctrine of *stare decisis* to concur. *See, Ex parte Porter*, 827 S.W.2d 324, 327 (Tex.Cr. App.1992) (Baird, J., dissenting). Finally, I express no opinion on whether the operation and effect of Art. IV, § 11(a) violates the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution because that issue is not before us. *See, Oakley*, 830 S.W.2d at 108, n. 1.

For these reasons, I concur in the result reached by the majority.

CLINTON, Judge, dissenting on appellant's petition for discretionary review.

That a constitutional amendment authorizes the legislature to enact laws on a subject does not *ipso facto* automatically ensure that the law actually enacted can never be violative of due course guarantees. In fact the version of § 4 of Article 37.07 now extant is in every material aspect identical to the § 4 that *Rose v. State*, 752 S.W.2d 529 (Tex.Cr.App.1988), held denied due course of law—and it still does. I dissent.

MALONEY, J., joins.