NO.
12-06-00032-CV

 

IN THE COURT OF APPEALS

                                                                

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

 

LEWIE BYERS AND FORREST WILLIAMS,      §          APPEAL FROM THE
241ST

APPELLANTS                      

 

V.                                                                                §          JUDICIAL DISTRICT COURT

 

JERRY PATTERSON, COMMISSIONER OF THE         

GENERAL LAND OFFICE, TEXAS GENERAL            §          SMITH
COUNTY, TEXAS

LAND OFFICE, CHEVRON USA, INC., GOLDSTON

OIL CORP., SAMSON LONE STAR LIMITED 

PARTNERSHIP, OXY USA, INC., JACK PHILLIPS, 

GAIL MIZER, LEE WALLACE, VIRGINIA WALLACE,

HAROLD NEFF & ASSOCIATES, INC., DORICE BAKER, 

BANK OF AMERICA, N.A., HENRY BELL, 

JOHN ALLEN BELL, MARYHELEN BOICE, 

J.R. BREWER, W.M. BURNEY, CHRISTINE R. BUTLER,

JAMES N. CHEATHAM, WILLIAM D. CHISUM, III, 

TRUSTEE FOR BRANDON MATHEW CHISUM AND 

WILLIAM DOWELL CHISUM, IV, WILLIAM D. CHISUM, IV, 

JOHNNIE LEE CHRISTIAN, CAREY COLLEY, S.G. CRAMER 

TRUST #1, BENNY DUNCAN, ARLENE DUNCAN, 

ROBERT DUNCAN, INDEPENDENT EXECUTOR OF THE 

ESTATE OF RUTH DUNCAN, DECEASED, LARRY ELWOOD,

LARRY W. GARNER, MARY GERMANN, JOSEPH A. 

HARRIS, MARY HAWKINS, BOREN HILDEBRAND,   

LINDA HOFFMAN, HOPEWELL BAPTIST CHURCH, 

HOPEWELL CEMETERY ASSOCIATION, IPH MINERALS, 

LTD., ABRON JERNIGAN, SHIRLEY JERNIGAN, 

OSCAR JERNIGAN, SHIRLEY JERNIGAN, JIMX INC., 

RUSSELL JOHNSON, SCOTT KITTRELL, SHAUN KRAMER, 

BILL LOWRIMORE, MARY LYNN MANLEY, MARGARETT

JORDAN ROYALTIES, STEVEN H. MASSEY, JOHNNY LEE MAY,  

SHIRLEY JERNIGAN, RICHARD A. MCBRIDE, EDDIE 

WAYNE MCFARLAND, CHARLES POLING, PAUL POLING, 

POWERS MINERAL GROUP, INC., QUADRILLE

LTD., REGIONS BANK, TRUSTEE, SAM ROOSTH, 

SUZANNE SMITH, CHESTER STRICKLER, MARIE 

STRICKLER, SUNSHINE TRUST, THE TAURUS 

CORPORATION, BETTY TURMAN, WELLS FARGO 








BANK, N.A., TRUSTEE OF THE ALICE M.
GOOD       

IRREVOCABLE TRUST DATED OCTOBER 21, 1986, 

ALBERT C. WILLIAMS, WINDSOR INTERESTS, 

DAN CHRIS WOLDERT, JR., THOMAS WOLDERT, 

LEMUEL WOODS, MARTHA WATSON YANCEY, 

MARY YANCY, BROOKS YATES, WILLIAM ZEIGLER, 

STEPHEN COLEMAN, JOHN H. HULSEY, JAMES 

MATTHEWS, KAREN MATTHEWS, EXXONMOBIL CORP., 

JERRY W. MORRIS, AND IVY DICKSON, 

APPELLEES




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 

 



OPINION

            Lewie Byers
and Forrest Williams appeal from the trial court’s order dismissing for want of
jurisdiction their suit appealing two no vacancy rulings by the Commissioner of
the General Land Office.  In five issues,
Appellants contend the amendment to the Texas Constitution upon which the trial
court based its order violates their rights under other provisions of the Texas
Constitution and under the Fifth and Fourteenth Amendments of the U.S.
Constitution.  We affirm.

 

Vacant Lands
in Texas

            When
admitted to the Union, Texas retained ownership of all the vacant and
unappropriated lands lying within its limits (the public domain).  Tex.
Nat. Res. Code Ann. § 11.011 (Vernon 2001).  Unappropriated public domain is set apart and
granted to the permanent school fund of the state.  Tex.
Educ. Code Ann. § 43.001(a)(2) (Vernon 2006).  With certain exceptions not applicable here,
vacant and unsurveyed public school land can be located, sold, and leased.  Tex.
Nat. Res. Code Ann. § 51.173(a) (Vernon Supp. 2006).  For a tract of land to be vacant, it must be
unsurveyed public land, and it must not be in conflict on the ground with lands
previously titled, awarded, or sold.  Tex. Nat. Res. Code Ann. § 51.172(6)(A)
(Vernon 2001); Strong v. Sunray DX Oil Co., 448
S.W.2d 728, 743 (Tex. Civ. App.–Corpus Christi 1969, writ ref’d n.r.e.) (op. on
reh’g).

            The current
Commissioner, Jerry Patterson, reported that Texas is made up of 171.4 million
acres and estimated that there are between 700,000 and 1.7 million acres of
land in Texas which would fit the statutory definition of “vacancy.”  A Joint Resolution Proposing a
Constitutional Amendment Clearing Land Titles by Relinquishing and Releasing
Any State Claim to Sovereign Ownership or Title to Interest in Certain
Land:  Hearing on S.J.R. 40, Before
the Senate Comm. on Natural Resources, 79th Leg., R.S.  (April 5, 2005) (Statement of Commissioner
Jerry Patterson, General Land Office of Texas). 
These vacant and unsurveyed lands are for the most part narrow strips
between old original surveys or take in land that is not actually covered by
existing grants, patents, awards, or surveys. 
3 Fred A. Lange, Texas Practice: 
Land Titles and Title Examination, § 100 (1961).

            To purchase
or lease a vacancy, a person must follow the procedures specified in the
Natural Resources Code, beginning with filing an application.  Tex.
Nat. Res. Code Ann. § 51.176 (Vernon Supp. 2006).  When a vacancy is alleged, it is necessary to
protect the interests of three parties. 
Lange, supra, at § 233. 
The first party is the State, who owns these lands in trust for the
public school children of Texas.  The
second is the discoverer of these possible state owned vacancies.  The third is the landowner or good faith
claimant who is in possession of the real property because he honestly believes
he is the owner of it.  Id.  The Commissioner will decide whether a
vacancy exists.  Tex. Nat. Res. Code Ann. § 51.188 (Vernon  Supp. 2006). 
Prior to June 17, 2005, applicants could appeal a finding by the
Commissioner that no vacancy exists.  Act
of May 28, 1993, 73rd Leg., R.S., ch. 992, § 1, 1993 Tex. Gen. Laws 4317, 4323
(amended 1995, 2001, 2005) (current version at Tex. Nat. Res. Code Ann. § 51.189 (Vernon Supp. 2006)).  The appeal was to a district court in the
county where any part of the land at issue was located.  Id.

 

Appellants’
Vacancy Claims

            Appellants
each separately filed an application with the Commissioner to lease or purchase
from the State of Texas parts of 992 acres in Smith County.  They asserted the land was vacant because of
errors in surveys done in 1835 by William Brookfield when he established the
boundaries of the Four-League Grant, also known as the Frost Thorn
Surveys.  Between them, Commissioners
David Dewhurst and Jerry Patterson issued findings of fact and conclusions of
law that referenced thirty-one later surveys prepared in the nineteenth century.  They determined through these surveys and the
evidence presented by Appellants that no vacancy existed in the land at
issue.  Both applications were denied.[1]

            Appellants
separately appealed to the district court, and the cases were
consolidated.  Initially, the defendants
were Land Commissioner Jerry Patterson, Texas General Land Office, Texaco
Exploration & Production, Inc.,[2] and Goldston Oil Company.  The district court abated the proceeding, and
133 individuals and entities made appearances as good faith claimants asserting
a real property interest in the land at issue. 
While the appeal was still pending in the district court, the people of
Texas amended their constitution by adding Article VII, Section 2C, which
provides that “the State of Texas relinquishes and releases any claim of
sovereign ownership or title to an interest in and to [the land at issue],
including mineral rights. . . .”  Tex. Const. art. VII, § 2C.  Chevron then filed a plea to the
jurisdiction, which some of the other defendants either joined in or
adopted.  The district court, relying on
this constitutional amendment, entered an order granting the plea to the
jurisdiction and dismissing Appellants’ claims with prejudice.  Appellants timely filed this appeal.

 

Standard of
Review

            A plea to
the jurisdiction is a dilatory plea, the purpose of which is to defeat the
plaintiffs’ claims without regard to whether the claims asserted have
merit.  Bland Indep. Sch. Dist. v.
Blue, 34 S.W.3d 547, 554 (Tex. 2000). 
A plea to the jurisdiction contests the trial court’s authority to
determine the subject matter of the cause of action.  Cornyn v. County of Hill, 10
S.W.3d 424, 427 (Tex. App.–Waco 2000, no pet.). 
If the evidence is undisputed or does not raise a fact issue on the
question of jurisdiction, then the trial court rules on the plea to the
jurisdiction as a matter of law.  Texas
Dep’t of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 226 (Tex.
2004).  Whether a court has subject
matter jurisdiction is a question of law, which we review de novo.  Id. 

 

The Power of
the People








            In their
first issue, Appellants assert that the trial court erred in granting the plea
to the jurisdiction because the constitutional amendment the order is based on,
Article VII, Section 2C, destroys their right to pursue their vacancy
applications in violation of the constitutional ban on retroactive laws
contained in Article I, Section 16 of the Texas Constitution.  They further argue that the amendment
violates Article I, Section 29, which limits the power of the government and
makes void any law that is contrary to the Texas Bill of Rights.  In their second issue, Appellants contend
that Article VII, Section 2C is a local or special law in violation of Article
III, Section 56 of the Texas Constitution. 


Sovereignty Over the Law

            A
fundamental concept of our government is that the people are sovereign and
possess all of the powers of sovereignty. 
Article I, Section 2 of the Texas Constitution makes this clear:

 

All political power is inherent in the
people, and all free governments are founded on their authority, and instituted
for their benefit.  The faith of the
people of Texas stands pledged to the preservation of a republican form of
government, and, subject to this limitation only, they have at all times the
inalienable right to alter, reform or abolish their government in such manner
as they may think expedient.

 

 

Tex. Const. art. I, § 2.  The people have sovereign rights and
privileges that are beyond the power of government.  See Tex.
Const. art. I, § 2 interp. commentary (Vernon 1997).  The government is merely the agent of the
people.  See Express Printing Co.
v. Copeland, 64 Tex. 354, 358 (1885).

            In their
capacity as sovereign, the people of Texas have the sole power to amend or
change any provision of the constitution. 
Oakley v. State, 830 S.W.2d 107, 109 (Tex. Crim. App.
1992).  In exercising this power, “[t]hey
can amend the Constitution in any particular that they desire[,]”  Stephens v. State, 138 Tex.
Crim. 43, 45, 133 S.W.2d 130, 131 (1939), subject to the U.S. Constitution and
their mandate to preserve the republican form of government.  Tex.
Const. art. I, §§ 1, 2.  This
principle applies even when a statute enacted for the same purpose would be
unconstitutional.  See Oakley,
830 S.W.2d at 109-10 (constitutional amendment permitting parole instruction
upheld although statute mandating parole instruction was unconstitutional as
violating due course of law provisions of Article I, sections 13 and 19 of
Texas Constitution).

            The
constitution of Texas is the fundamental law of the state, “the supreme law of
the land.” Oakley, 830 S.W.2d at 109.  When the people of Texas adopted Article VII,
Section 2C in 2005, it became as much a part of the Texas Constitution as if it
had been adopted by the people of Texas in 1876.  See id. at 109-10.  Assuming, however, that Article VII, Section
2C conflicts with Article I, Section 16 as Appellants suggest, the
amendment still became part of the fundamental or organic law of the State of
Texas.  See id.  To resolve any inconsistency between an
amended provision and the constitution as originally adopted in 1876, two rules
of constitutional construction assist us in determining which controls: (1)
specific provisions control general provisions and (2) the provision adopted
later in time will be given controlling effect, it being the last expression of
the sovereign will of the people.  Id.
at 110.  Article VII, Section 2C would
prevail under both rules.

            Appellants
further contend that Article VII, Section 2C impermissibly contravenes
Article I, Section 29.  Article I,
Section 29 states that “everything in [the Texas] ‘Bill of Rights’ is excepted
out of the general powers of government, and shall forever remain inviolate,
and all laws contrary thereto, or to the following provisions, shall be void.”  Tex.
Const. art. I, § 29.  Appellants
assert that this language prohibits the people of Texas from adopting a
constitutional amendment that conflicts with the Texas Bill of Rights.  The first clause of Section 29 establishes
that its purpose is to “guard against transgressions of the high powers” delegated
to the state government by the Texas Constitution.  Republican Party of Tex. v. Dietz,
940 S.W.2d 86, 89 (Tex. 1997) (orig. proceeding).  It logically follows that only the state
government can transgress the “high powers” delegated to it.  Therefore, it is only the government that is
constrained by Article I, Section 29. 
See id.  Moreover,
Article I, Section 29 does not make Article I supreme over other specific
constitutional provisions and does not mandate that the provisions in Article I
of the Texas Constitution supersede all other constitutional provisions.  Oakley, 830 S.W.2d at 111.  Article I, Section 29 does not limit the
people’s power to amend their constitution. 
See id.

Sovereignty Over the Land

            In adopting
Article VII, Section 2C, the people exercised another of their sovereign
roles.  The people of Texas own the
public domain of Texas.  See Hamilton
v. State, 152 S.W. 1117, 1120 (Tex. Civ. App.–Austin 1912, writ ref’d).  Absent a delegation of power, only the
people, as direct representatives of sovereignty, may surrender the State’s
ownership of the public domain of Texas. 
See State v. Executive Condos., Inc., 673 S.W.2d 330, 332
(Tex. App.–Corpus Christi 1984, writ ref’d n.r.e.).

            In the 1845
Annexation Treaty by which Texas became the twenty-eighth state of the United
States, the people of Texas retained their public domain.  See Tex.
Nat. Res. Code Ann. § 11.011. 
There have always existed with the people of this State three prominent
objects which, through their constitutions and laws, they have worked to
accomplish by means of the public domain. 
Galveston, Harrisburg & San Antonio Ry. Co. v. State,
77 Tex. 367, 382, 12 S.W. 988, 991 (1889). 
These objects were to secure immigration, promote education, and
encourage the construction of railroads. 
Id.  In their 1876
Texas Constitution, the people established a “perpetual” school fund that
included one half of the State’s public domain.  See Tex.
Const. art. VII, § 2.  The
constitution also provided that the “permanent” school fund included all land
appropriated for public schools by the constitution or other law, all other
properties belonging to the permanent school fund, and all revenues derived
from the land.  See Tex. Const. art. VII, § 5(a); Hogue
v. Baker, 92 Tex. 58, 63, 45 S.W. 1004, 1005 (1898) (orig.
proceeding).  In 1898, the Texas Supreme
Court declared that the only public domain remaining in Texas was dedicated to
education.  See Hogue, 92
Tex. at 65, 45 S.W. at 1007.  Presently,
the permanent school fund includes all land appropriated for the public schools
by the constitution and the laws of Texas and all unappropriated public domain
remaining in the state.  See Tex. Educ. Code §
43.001(a)(1)-(2).  School lands are part
of the public domain of the state that belong to the people as fully as they
did before they were declared public school lands.  See Smissen v. State, 71 Tex.
222, 231, 9 S.W. 112, 115 (1888).  The
procedures for locating, selling, and leasing vacant and unsurveyed public
school land are prescribed by the Texas Natural Resources Code.  Neither the legislature nor the Commissioner
is authorized by the Texas Constitution or other law to relinquish any claim of
sovereign ownership or title the State may have in lands alleged to be vacant,
but declared not vacant by the Commissioner. 
Therefore, only the people have the authority to take such action.  See Executive Condos., Inc.,
673 S.W.2d at 332.

Local or Special Law

            Article III,
Section 56 states that the legislature shall not enact a local or special
law.  Tex.  Const. art. III, § 56.  By its language, this section is a limitation
upon the legislature as the representative of the people.  It does not limit the people’s power to amend
their constitution.  Further, when the
people act, they are establishing fundamental or organic law of the State.  Oakley, 830 S.W.2d at 109.  

Conclusion

            The people
of Texas are sovereign in determining the fundamental law of the state.  Id.  They are also sovereign in determining the
real property that makes up the public domain of Texas.  See Smissen, 71 Tex. at 232, 9
S.W. at 115.  The people of Texas
exercised both of these sovereign roles in adopting Article VII, Section
2C.  Neither Article I, Section 16 nor
Article I, Section 29 limits the people when they are acting in either of these
roles.  By its own language, Article III,
Section 56 does not apply to the people in their role of adopting the
fundamental law of the state or in their role as keepers of the public domain.  Therefore, Article VII, Section 2C does not
violate these constitutional provisions. 
We hold that the people of Texas acted within their authority in these
two sovereign roles when they adopted Article VII, Section 2C of the Texas
Constitution.  We overrule Appellants’
issues one and two.

 

Fifth
Amendment

            In their
fourth issue, Appellants contend that the trial court erred in granting the
plea to the jurisdiction because application of Article VII, Section 2C
constitutes a taking of property without just compensation in violation of the
Fifth Amendment to the United States Constitution.

            The Takings
Clause of the Fifth Amendment provides that private property shall not be taken
for public use without just compensation. 
U.S. Const. amend. V.  In reviewing a takings claim, we first decide
whether an appellant has a property interest in the subject of the alleged
taking.[3]  Adams v. United States, 391
F.3d 1212, 1218-19 (Fed. Cir. 2004), cert. denied, 126 S. Ct. 330, 163
L. Ed. 2d 44 (2005).  Once we have
determined that such a property interest exists, we then decide whether a
taking occurred.  Id.

            Appellants
assert that once they complied with the administrative requirements associated
with filing a vacancy application, they acquired a constitutionally protected
property interest in maintaining a cause of action to establish their vacancies
and purchasing or leasing the vacant land. 
At the time Article VII, Section 2C was adopted, the administrative phase
of the vacancy process was complete. 
Therefore, Appellants were not deprived of a ruling on their vacancy
applications.  Instead they received
unfavorable rulings from the Commissioners for which judicial review became
unavailable through the application of the amendment.  Thus, the substance of Appellants’ argument
is that they had a constitutionally protected right to judicial review as
provided by the Texas Natural Resources Code at the time they filed the
appeals.

            It is a
fundamental proposition that no one has a vested right in the continuance of
present laws in relation to a particular subject.  Subaru of Am., Inc. v. David McDavid
Nissan, Inc., 84 S.W.3d 212, 219 (Tex. 2002); see also Sw. Bell
Tel. Co. v. City of Kountze, 543 S.W.2d 871, 873-74 (Tex. Civ. App.–Beaumont
1976, no writ) (holding that newly enacted statute granted agency exclusive
jurisdiction of claim then pending on interlocutory appeal, thereby depriving
trial court and appellate court of jurisdiction).  Stated another way, no one has a property
right in a mere rule of law.  Subaru
of Am., Inc., 84 S.W.3d at 219. 
Appellants’ right to judicial review in this case was contingent upon
(1) the continuation of existing statutory law relating to their vacancy claims
and (2) the decision of the people of Texas not to adopt a constitutional
amendment relinquishing their title, if any, to the land at issue.  Therefore, judicial review of the
Commissioners’ rulings was at best a mere expectation based upon an anticipated
continuance of present law.  See Ex
parte Abell, 613 S.W.2d 255, 262 (Tex. 1981).  That expectation does not constitute a
constitutionally protected property right. 
See Subaru of Am., Inc., 84 S.W.3d at 219; Sw. Bell
Tel., 543 S.W.2d at 875.

            Had
Appellants successfully asserted their vacancy claims, they would have acquired
purchase or lease rights to the subject land, as well as a nonparticipating
royalty interest and a percentage of the geothermal resources, subject to
certain statutory prerequisites.  Prior
to favorable rulings on their applications and compliance with any other
applicable law, these interests were merely contingent and therefore not
constitutionally protected property interests. 
To constitute a property interest that implicates the Takings Clause, a
person must have more than a desire for the interest or a unilateral
expectation of it.  See Roth,
408 U.S. at 577, 92 S. Ct. at 2709.

            Appellants
did not acquire a property interest protected by the Takings Clause of the
Fifth Amendment when they complied with the administrative requirements for
filing a vacancy application.  Therefore,
we need not address whether a taking occurred. 
We hold that the Takings Clause of the Fifth Amendment to the United
States Constitution was not implicated by the people when they adopted Article
VII, Section 2C of the Texas Constitution. 
We overrule Appellants’ issue four.

 

Fourteenth
Amendment

            In their
third issue, Appellants contend that the trial court erred in granting the plea
to the jurisdiction because Article VII, Section 2C violates their rights to
substantive due process, equal protection, and procedural due process protected
by the Fourteenth Amendment to the United States Constitution.  They argue that they had a constitutionally
protected interest in their vacancy applications and the associated legal
rights and benefits, including the right to appeal the no vacancy
determinations.  They contend they were
singled out for different treatment from other vacancy applicants and there is no
rational basis for the differential treatment. 
Further, they argue that Article VII, Section 2C allowed Appellees to
change the facts in mid-litigation, improperly denying Appellants of the right
to use judicial procedures.

Substantive Due Process and Equal Protection

            A violation
of substantive due process occurs only when the government deprives individuals
of constitutionally protected rights by an arbitrary use of its power.  Simi Inv. Co. v. Harris County,
236 F.3d 240, 249 (5th Cir. 2000).  To
prevail on a substantive due process claim, the claimant must establish that it
held a constitutionally protected property right to which the Fourteenth
Amendment’s due process protection applies. 
Id. at 249-50.  The
court must then review the government’s actions against the deferential “rational
basis” test that governs substantive due process claims.  Id. at 249.  Thus, Appellants must show that the people’s
adoption of Article VII, Section 2C was not rationally related to furthering a
legitimate state interest.  See Mikeska
v. City of Galveston, 451 F.3d 376, 379 (5th Cir. 2006).  If the question is at least debatable, there
is no substantive due process violation. 
Energy Mgmt. Corp. v. City of Shreveport, 467 F.3d 471,
481 (5th Cir. 2006).

            The Equal
Protection Clause prohibits differential treatment of persons similarly
situated without a rational basis.  See
Mikeska, 451 F.3d at 381. 
When no suspect classification or fundamental right is implicated,
differential treatment of similarly situated individuals is permissible as long
as it is rationally related to a legitimate state interest.  Tigner v. Cockrell, 264 F.3d
521, 526 (5th Cir. 2001).  To establish
an equal protection violation, Appellants must show that they have been treated
differently and that there is no rational basis for the difference in
treatment.  See Village of
Willowbrook v. Olech, 528 U.S. 562, 564, 120 S. Ct. 1073, 1074, 145 L.
Ed. 2d 1060 (2000).

            Appellants
have not presented any evidence that their circumstances are different from
those in which constitutional amendments previously have been adopted.  Therefore, we hold that Article VII, Section
2C does not violate Appellants’ right to equal protection of the laws.

            In
addressing Appellants’ substantive due process claim, our review focuses on the
rational basis relied on by the people of Texas in adopting Article VII,
Section 2C of the Texas Constitution because that amendment had the effect of
ending Appellants’ appeal of the Commissioners’ no vacancy determinations.  The basic ideal of American social structure
was a country of free citizens as smallholders living on their own bits of
land.  Lawrence M. Friedman, A History
of American Law 232 (2d ed. 1985). 
It was also the desire of Texas throughout the nineteenth century to
encourage families to settle in the state by giving its public lands away
freely.  See T. R. Fehrenbach, Lone
Star: A History of Texas and the Texans 282 (1983).  The part of Smith County where the land at
issue is located was first surveyed and settled in 1835.  The individuals who believe they are
successors in interest of title descending from the sovereign have an interest
in clearing their real property titles of any irregularity.  The people of Texas also have a legitimate
interest in maintaining the integrity of real property titles in the
state.  Anything less would not be
keeping faith with the foundational purpose of land ownership established in
both the United States and Texas, i.e., the American Dream.

            Paul Pruitt,
executive of a land title company headquartered in Dallas, testified in the
trial court that his company and other named title companies would not insure
the title to any of the real property at issue, or contiguous tracts, while the
vacancy claims are pending.  He further
explained that the property was unmarketable because of the uncertainty of the
title created by Appellants’ vacancy claims. 
He testified that no money would be loaned by any financial institution
for home mortgages, home improvements, or development of the property at issue.  

            Disruptions
in the lives of the individuals and entities who own property interests in this
acreage are not beneficial for an economically and socially healthy
society.  Amending the constitution to
allow the individuals and entities in this case to have clear titles to their
real property and to take part in the economic life of their community is a
rational decision the people of Texas logically made.  We hold that the people’s adoption of Article
VII, Section 2C of the Texas Constitution was rationally related to furthering
a legitimate state interest.  Therefore,
Article VII, Section 2C does not violate Appellants’ right to substantive due
process.

Procedural Due Process








            Procedural
due process ensures that government decisions will be made with sufficient procedural
safeguards.  See Mathews v.
Eldridge, 424 U.S. 319, 332, 96 S. Ct. 893, 901, 47 L. Ed. 2d 18
(1976).  Procedural due process requires
an opportunity granted at a meaningful time in a meaningful manner for a
hearing appropriate to the nature of the case. 
Boddie v. Connecticut, 401 U.S. 371, 378, 91 S. Ct. 780,
786, 28 L. Ed. 2d 113 (1971).  Due
process is not a technical conception with a fixed content unrelated to time,
place, and circumstances.  Mathews,
424 U.S. at 334, 96 S. Ct. at 902.  Due
process is flexible and calls for such procedural protections as the particular
situation demands.  Id.  In determining whether procedural due process
has been denied, substance rather than form is to be considered.  See Chicago, Burlington &
Quincy Ry. Co. v. Chicago, 166 U.S. 226, 235, 17 S. Ct.
581, 584, 41 L. Ed. 979 (1897). 

            The
requirements of procedural due process apply only to the deprivation of
interests encompassed by the Fourteenth Amendment’s protection of liberty and
property.  Roth, 408 U.S.
at 569, 92 S. Ct. at 2705.  A property
interest that is protected by due process arises only when an individual has a
legitimate claim of entitlement and not merely a unilateral expectation.  Id., 408 U.S. at 577, 92 S. Ct.
at 2709.  In addressing Appellants’
fourth issue, we considered and rejected Appellants’ contention that, for
purposes of the Takings Clause, they acquired a constitutionally protected
property interest in their vacancy claims. 
Based upon the same reasoning, we reach the same conclusion for purposes
of Appellants’ procedural due process claim. 
Because Appellants did not acquire a constitutionally protected property
interest through their vacancy applications, they cannot show that the trial
court’s application of Article VII, Section 2C constituted a denial of
procedural due process.

            Moreover,
Appellants were afforded ample due process. 
Each appellant had the opportunity to present his application to the
General Land Office.  Based on a review
of the appointed surveyor’s survey, objections to the survey, Land Office staff
recommendations, and public records of the Land Office, the Commissioner made
findings of fact and conclusions of law when he denied Byers’s
application.  Byers appealed the decision
to the district court and successfully argued that the case should be remanded
to the Land Office for consideration of a second survey, one prepared at Byers’s
request.  The Commissioner reconsidered
the application with the benefit of both surveys and again concluded that no
vacancy existed.  In response to Williams’s
application, the Land Office vacancy panel heard evidence and public comment in
a public hearing, reviewed materials on file, Williams’s application, and other
submissions of Williams and opponents of the application, and visited the site
of the alleged vacancy.  The panel
submitted extensive findings of fact and conclusions of law, together with
analysis of the issues and a recommendation to the Commissioner that a final
order of “Not Vacant Land” be issued. 
The Commissioner reviewed the records and evidence, adopted the panel’s
findings and conclusions, and issued a final order of “Not Vacant Land” in
response to Williams’s application. 
Thus, the record shows that Appellants received procedural due process
before the Commissioner entered no vacancy rulings.  Appellants also had the opportunity to
participate in the constitutional amendment process and make their interests
and opinions known.  Appellants were thus
afforded meaningful opportunities to persuade the people of Texas to reject
this constitutional amendment.  We hold
that Appellants’ procedural due process rights under the Fourteenth Amendment
were not violated by the people when, by amendment to the Texas Constitution,
they made the final decision in Appellants’ vacancy claim rather than leaving
it up to the courts.  We overrule
Appellants’ issue three.

 

Conclusion

            Through
Article VII, Section 2C, the people of Texas relinquished any rights they had
to the land at issue.  That amendment
does not violate Article I, Sections 16 and 29, or Article III, Section 56 of
the Texas Constitution.  Nor does it
violate the Fifth or Fourteenth Amendments to the United States
Constitution.  Appellants have not shown
that Article VII, Section 2C was an improper exercise of the power of the
people of Texas to amend their constitution. 
Because the State of Texas does not possess title to the land at issue,
it is not subject to the vacancy statutes. 
It follows that the trial court cannot grant any relief to Appellants
and it properly granted the plea to the jurisdiction.  We need not reach Appellants’ fifth issue
because it is not necessary to the disposition of this appeal.  See Tex.
R. App. P. 47.1. 

            We affirm the trial court’s order granting
the plea to the jurisdiction and dismissing the cause with prejudice.

 

                                                                                                     JAMES T. WORTHEN    

                                                                                                                 Chief Justice

 

Opinion delivered March 14,
2007.

Panel consisted of Worthen, C.J., Griffith, J., and
Hoyle, J.

 

(PUBLISH)











[1] Had the Commissioner ruled the land was
vacant, Appellants would have been entitled to a perpetual nonparticipating
royalty interest of not less than 1/32 or more than 1/16 of all oil, gas, and
sulphur and not less than 

one percent or more than two
percent of the value of all geothermal resources and all other minerals
produced from the land.  Act of May 28,
1993, 73rd Leg., R.S., ch. 991, § 1, 1993 Tex. Gen. Laws 4317, 4326 (amended
2001, 2005) (current version at Tex.
Nat. Res. Code Ann. § 51.195(b) (Vernon Supp. 2006)).





[2]
Chevron USA, Inc. is the successor in interest to Texaco Exploration &
Production, Inc.





[3] Property interests are not created by the
Constitution.  Board of Regents v.
Roth, 408 U.S. 564, 577, 92 S. Ct. 2701, 2709, 33 L. Ed. 2d 548
(1972).  Rather, they are created and
their dimensions are defined by existing rules or understandings that stem from
an independent source such as state law. 
Id.