EXPRESS PRINTING CO. V. JOHN H. COPELAND.

(Case No. 5140.)

1. LIBEL — PRACTICE — INCONSISTENT PLEAS.— Elsewhere the rule seems established that in cases of libel, where the defendant justifies, by alleging the truth of the libelous matter, and fails to prove the allegation, it may be considered a circumstance tending to show malice; but under our statute the absolute right to plead several matters is unlimited if they are pertinent to the cause, filed at the same time and in the due order of pleading. There is no qualification or abridgment of this right in matters that are inconsistent; such a qualification would destroy the right. Following Fowler v. Davenport, 21 Tex., 626.

2. PLEADING.— One plea cannot be used as evidence, or as an admission, for the purpose of destroying another inconsistent plea contained in the same answer; and where in a libel suit the defendant fails to sustain his plea of justification, that plea will not be taken as a circumstance tending to establish malice on the ground that the plea was not sustained by the evidence, when probable cause and the non-existence of malice are asserted in the answer.

3. CANDIDATES — LIBEL — PRIVILEGE OF THE PRESS.— When a person becomes a candidate for a public office, conferred by a popular election, he should be considered as putting his character in issue, so far as respects his qualifications for the office. Whatever pertains to the qualifications of the candidate for the office sought is a legitimate subject for discussion and comment, provided all statements and comments are confined to the truth, or what in good faith and upon probable cause is believed to be true. The press is entitled to the same privileges and subject to the same limitations in discussing qualifications of candidates as are private individuals. "Every facility should be allowed for the quick dissemination of useful facts, and the freedom of the press should not be restrained further than is absolutely necessary to protect private character from falsehood and slander." Belo & Co. v. Wren, 5 Tex. L. R., 153.

APPEAL from Bexar. Tried below before the Hon. Geo. H. Noonan.

On February 23, 1883, appellee brought this suit against appellant to recover damages for a libel; alleging that on the 7th day of January, 1883, he then being a candidate for the office of mayor of the city of San Antonio, which election was fixed for and did take place on the 8th day of January, appellant published in its newspaper, the "San Antonio Express," a false, wicked and malicious libel, with the intent and for the purpose of injuring him. The purported libel is as follows:

"As Mr. Copeland is a candidate for mayor, and as that officer has the general management of our finances, it is a legitimate question for the people to ask how he has managed affairs of others heretofore placed in his hands. We know very little of such transactions, though the records show one case that may give some valuable hints to the voters. We will state the facts, allowing the reader to make his own comments: In 1881, T. P. Aplin died, and Mr. Copeland was appointed administrator of his little estate, the total valuation of which was $2,579.90. The administration was closed November 23, and the report shows a total expense of administering on the estate of $2,579.90, to have been $882.28, and the administrator was allowed to retain the balance of the estate, $1,777.62, subject to the order and instructions of the heirs. What such retention cost the heirs we do not know, but from the charges of administration, it was doubtless a pretty heavy sum. The heirs, no doubt, were afraid to give any instructions through fear that the

balance of the estate would not pay the fees accruing for the money left in the administrator's hands."

Prayer for judgment in the sum of $25,000.

Appellant answered by general and special exceptions, general denial, also specially denied the meaning attributed to the statement, as given in the petition, and also that appellant published the statement believing it to be true; that the facts were furnished by others who assured the appellant of their truth, and that the same was published in good faith, without any malice or ill-will against appellee, and under the honest belief that it was matter that it was proper to be made known in view of appellee's candidacy for the office of mayor.

A trial was had December 24, 1883, which resulted in a verdict and judgment against appellant for $2,500, and from which this appeal was taken and perfected.

*Simpson & James* and *Shook & Dittmar*, for appellant, cited: Ormsby v. Douglass, 37 N. Y., 482, 483; Lewis & Herrick v. Chapman, 16 N. Y., 372; Thompson v. Dashwood, L. R., 11 Q. B. Div., 43; Am. Law Register, January, 1884, pp. 20, 25, and see cases there cited, particularly Clark v. Roe, 4 Ir. C. L., 1; Wait's Actions and Defenses, vol. 4, pp. 282, 288, 306; Munster v. Lamb, recent English decision, reported in Am. Law Reg. of January, 1884, p. 12; art. 1262, R. S.; Klink v. Kolby, 46 N. Y., 427; Wilson v. Robinson, 7 Q. B., Ad. & Ell. (N. S.), 68 (7 Am. Rep., 369); Sayles & Bassett, Tex. Pl. and Pr., § 647; Gabel v. Weisensee, 49 Tex., 142; Van Wyck v. Aspinwall, 17 N. Y., 193; 2 Greenl. Ev., § 421.

*J. H. McLeary* and *A. W. Dillard*, for appellee, cited: Cooley on Cons. Lim., sec. 504; Starkie on Slander, p. 140; Cooley on Torts, 204 *et seq.;* Townshend on Slander and Libel, secs. 176, 177; 4 Black. Com., p. 150; R. S., ch. I, title XVI; Tex. Crim. Code, arts. 616, 622, 628, 629, 630, 642, 643 and 786; Ross v. Fitch, 58 Tex., 151; Smith v. State, 4 Tex., 297; Yarborough v. Tate, 14 Tex., 486; Linney v. Maton, 13 Tex., 453; Holt v. Parsons, 23 Tex., 18, 19 and 20; Hunt v. State, 7 Tex. Ct. App., 212; Thrasher v. State, 3 Tex. Ct. App., 281; Houston County v. Dwyer, 59 Tex., 114, and cases cited; Mercer v. Hall, 2 Tex., 285 to 288; 2 Addison on Torts, secs. 928 and 1089, pp. 307 and 311.

Watts, J. Com. App.— Elsewhere the rule seems well established that in this class of cases, where the defendant justifies by alleging

the truth of the libelous matter, and fails to establish the truth of the plea, this may be considered as a circumstance tending to show malice. But our statute gives the defendant the right to plead, in his answer, as many several matters, whether of law or fact, as he may deem necessary to his defense, and which are pertinent to the cause; provided that he shall file them all at the same time and in the due order of pleading.

In Fowler v. Davenport, 21 Tex., 633, in construing that provision of the statute, Justice Roberts remarked that: "The general and absolute right, here given, to plead 'several matters' is unlimited, if they are pertinent to the cause, filed all at the same time, and in the due order of pleading. There is no qualification or abridgment of this right in matters that are inconsistent. Such a qualification would destroy the right." The conclusion reached in that case was that one plea could not be used as evidence or as an admission, for the purpose of destroying another inconsistent plea contained in the same answer.

It would seem, therefore, that in this character of suit, where the defendant has asserted several inconsistent pleas in the same answer, and among them one justifying, by asserting the truth of the supposed libelous matter, to permit that plea to be taken as a circumstance tending to establish malice, on the ground that the plea was not sustained by the evidence, where probable cause and the nonexistence of malice has been asserted in the answer, and is pertinent to the cause, would, in the language of Justice Roberts, "destroy the right."

Here the court instructed the jury that appellant had pleaded "the truth of the publication in justification, and if the truth of the publication had not been established by the evidence, then to consider the fact of its having been pleaded as a circumstance tending to show malice, and to aggravate the injury done to plaintiff."

There exist two fatal objections to this instruction: first, there is no plea contained in the answer, asserting the truth of the publication as a defense. Townshend on Slander, etc., § 357.

In the second place, appellant had asserted by plea that the publication was privileged, and made upon probable cause in good faith, and without malice. So that in either view the charge is erroneous.

With respect to the question of privilege asserted by the answer, there is considerable confusion found in the adjudicated cases. Judge Cooley, in his work on Torts, page 217, says: "The freedom of the press was undoubtedly intended to be secured on public grounds, and the general purpose may be said to be, to preclude those in authority from making use of the machinery of the law to

prevent full discussion of political and other matters in which the public are concerned. With this end in view not only must freedom of discussion be permitted, but there must be exemption afterward from liability for any publication made in good faith, and in the belief of its truth, the making of which, if true, would be justified by the occasion. There should, consequently, be freedom in discussing, in good faith, the character, the habits and mental and moral qualifications of any person presenting himself, or presented by his friends, as a candidate for a public office, either to the electors or to a board or officer having powers of appointment."

It may be asserted as a sound principle, and one supported by authority, that when a person consents to become a candidate for public office, conferred by a popular election, he should be considered as putting his character in issue so far as respects his qualification for the office. Com. v. Clap, 4 Mass., 169; Com. v. Odell, 3 Pittsb. (Penn.), 449; Rearick v. Wilcox, 10 West. Jur., 681; Odgers on Libel, etc., 236.

Whatever pertains to the qualification of the candidate for the office sought is a legitimate subject for discussion and comment, provided that such discussion and comment is not extended beyond the prescribed limits. That is, all statements and comments in this respect must be confined to the truth, or what in good faith and upon probable cause is believed to be true, and the matter must be pertinent to the issue, i. e., it must relate to the suitableness or unfitness of the candidate for the office.

In our form of government the supreme power is in the people; they create offices and select the officers. Then, in the exercise of this high and important power of selecting their agents to administer for them the affairs of government, are the people to be denied the right of discussion and comment respecting the qualification or want of qualification of those who, by consenting to become candidates, challenge the support of the people on the ground of their peculiar fitness for the office sought? Usually it is by such discussion and comment concerning the qualification of opposing candidates that the people obtain the requisite information to enable them intelligently to exercise the elective franchise. Any abridgment of this right of discussion and comment, beyond the limitations heretofore stated, it seems to us would be extremely unwise.

And in this respect the press occupies the same position and should be included in the same category with the people. Public journals are supported by, and are published with a view to the dissemination of useful knowledge among the people, and the com-

ments and discussions of these journals are entitled to the same privileges and subject to the same limitations respecting the qualification and suitableness of candidates for office as those of the people.

Chief Justice Willie, in Belo & Co. v. Wren, 5 Tex. Law Review, 153, truly remarked that "every facility should be allowed for the quick dissemination of useful facts, and the freedom of the press should not be restrained further than is absolutely necessary to protect private character from falsehood and slander."

It is implied by the rule announced by us that the matter published must be such as is justified by the occasion, that is, it must be such as would be appropriate for the electors to consider, in making a selection for the office. Ordinarily, that would be a question of fact to be submitted to the jury by appropriate instructions.

Then if the matter published is true, and such as is justified by the occasion, there could be no recovery by the candidate against the publisher. If the matter is not justified by the occasion, then the fact that the person against whom it was directed was at the time a candidate for office would not exempt the publisher from liability, whether the matter published was true or false. And although the matter published might be justified by the occasion, still, if it was false, a right of action would accrue against the publisher, to defeat which the burden would be upon him to show that the publication was made in good faith, in the honest belief of its truth, and besides, that there were just and reasonable grounds for entertaining that belief.

While the rule here announced seems to be just to all, we are aware of the fact that it is not in accord with some, and perhaps a majority, of the adjudicated cases in this country. In New York, comments and discussions relating to public officers and candidates for official positions are placed upon the same footing as comments and discussions concerning the private character of other persons.

The tendency in the English courts is more liberal in protecting the freedom of the press, and the holding there is in accord with the conclusions announced in this opinion, and which we believe to be well founded in reason and more nearly in accord with the spirit of constitutional liberty, and free republican institutions.

The other errors assigned, although numerous, are of secondary importance, and such as will not likely occur upon another trial.

Our conclusion is that the judgment ought to be reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion adopted June 16, 1885.]