**STATE of Texas, et al., Appellants,**

v.

**EXECUTIVE CONDOMINIUMS, INC., Appellee.**

No. 13–83–122–CV.

Court of Appeals of Texas, Corpus Christi.

May 31, 1984.

Rehearing Denied June 21, 1984.

R. Lambeth Townsend, Asst. Atty. Gen., Austin, for appellants.

Curtis Bonner, Bonner & Bonner, Harlingen, for appellee.

Before NYE, C.J., and YOUNG and UTTER, JJ.

## OPINION

NYE, Chief Justice.

Appellee brought this suit against the State of Texas and Bob Armstrong, Commissioner of the General Land Office, to set aside a conveyance of land on South Padre Island. The case was tried before various trial judges without the benefit of a jury. One of the trial judges rendered judgment that the General Land Office and the Land Commissioner be divested of their title to the land, and that appellee be granted its "writ of possession." The State of Texas appeals. We reverse the judgment of the trial court and order that this action be dismissed.

Mr. Matt Gorges testified that he was president of appellee corporation when construction was begun on a South Padre Island condominium project, and that, after construction had begun near the open beach on South Padre Island, a man identifying himself as Jose Uranga, an official from the Attorney General's office, visited with him. Soon thereafter, Uranga notified the appellee corporation that the location of the condominium project was allegedly in violation of provisions of the Open Beaches Act. He suggested that the appellee corporation postpone construction pending a judicial determination of the propriety of the location with reference to the "open beach." One of appellee's corporate attorneys testified that a settlement offer was proposed to the effect that, if appellee corporation would purchase a nearby tract of land and "trade" it to the State, the condominium project could proceed to final completion. It was appellee's opinion that the condominium corporation had no alternative other than to accept a settlement of the case "[b]ecause of the losses involved that were going to be incurred, had the project been shut down for even a month." There was evidence in the record that the State's litigation of an "open beach" boundary such as this might last for two years in court. Appellee then executed an "Agreed Judgment" with the Attorney General's office under which appellee purchased a tract of land and transferred the ownership to the State of Texas. This agreed judgment was approved by the trial judge in front of whom the action was pending. Appellee corporation was then permitted to build and sell its condominium project.

After all of the condominium units were sold, the appellee corporation brought this suit against the State of Texas to set aside the settlement agreement and regain ownership of the lot that it had traded to the State of Texas. The trial court rendered judgment that the appellee corporation should regain title to the tract of land which it had transferred to the State of Texas.

The complexity of this lawsuit is reflected by the record. The Agreed Judgment entered into by the parties was signed by Judge Darrell Hester on June 23, 1978. The docket sheet reflects that this action was filed on August 25, 1980. On June 1, 1981, Judge Raul Gonzalez, after hearing, ordered that appellants' plea to the jurisdiction be "carried along with the case." On June 9, 1982, Judge George Storter overruled the pleas to the jurisdiction of both the Commissioner and the State of Texas, who then jointly filed a "Motion to Reconsider Defendants' Pleas to the Jurisdiction," which was filed on September 29, 1982. Although the record does not reflect whether the Motion to Re-

consider was ever presented to the trial court, an "Order Overruling Plea in Abatement" was signed by Judge Storter on October 1, 1982. Judge Storter signed the present judgment in favor of appellee on December 31, 1982. Judge Storter left the bench as of January 1, 1983. The Findings of Fact and Conclusions of Law requested by appellant were signed by Judge Diego Leal on April 20, 1983. This was the fourth district trial judge to hear a portion of the case.

■■■ Appellants first argue that the trial court erred by denying the plea to the jurisdiction made by the State of Texas. We agree. The State of Texas may not be sued without legislative consent. It is undisputed that appellee did not seek or obtain legislative consent in this case. The State of Texas should have been dismissed as a party-defendant at the Motion to Dismiss. *State v. Lain,* 162 Tex. 549, 349 S.W.2d 579 (1961); *Griffin v. Hawn,* 161 Tex. 422, 341 S.W.2d 151 (1960).

■■■ Land located on South Padre Island which has been conveyed to the State of Texas pursuant to a final Agreed Judgment cannot now be conveyed away by the Commissioner of the General Land Office. In other words, the Commissioner, the only party-defendant properly remaining in this suit, lacked the authority to grant the relief appellee requested; he alone could not *reconvey* the State's property back to appellee.

The powers and duties of the Commissioner are set forth in Section 31.051 of the Natural Resources Code (Vernon 1978) as follows:

The commissioner shall:

(1) superintend, control, and direct the official conduct of subordinate officers of the land office;

(2) execute and perform all acts and other things relating to public land of the state or rights of individuals in public land which is required by law;

(3) make and enforce suitable rules consistent with the law; and

(4) give information when required to the governor and the legislature relating to public land and the land office.

We have found no statute that authorizes the outright conveyance of State-owned property by the Commissioner. Had the legislature desired to authorize the Commissioner to convey beach property, it could have passed provisions similar to those found in Chapter 32 of the Natural Resources Code concerning alienation of land dedicated to the permanent school fund, or as quoted by the Texas Supreme Court in the case of *State v. Easley,* 404 S.W.2d 296 (Tex.1966):

"Before the State's interest and title to land acquired for highway purposes may be transferred out of the State, four things under Art. 6673a are necessary: (1) The State Highway Commission must determine that the property theretofore acquired for highway purposes is not longer needed for such purposes; (2) the Commission must recommend to the Governor that the land be sold, advising as to the fair and reasonable value of the land or interest therein; (3) the Governor must execute a proper deed conveying the State's right, title and interest in the land; and (4) the Attorney General shall approve all transfers and conveyances under this Act."

Section 33.001(g) of the Natural Resources Code states that "the surface estate in coastal public land shall not be alienated except by the granting of leaseholds and lesser interests and by exchanges of coastal public land for littoral property as provided in this chapter." "Coastal public land" is defined as "all or any portion of state-owned submerged land, ... and all state-owned islands or portions of islands in the coastal area."

Although the Commissioner is statutorily required to maintain the physical manifestation of title, he is not authorized to independently alienate that title without legislative authority. Only the direct, as opposed to the ministerial, representative of sovereignty may surrender the State's ownership of real property.

The case of *City of Galveston v. Mann*, 135 Tex. 319, 143 S.W.2d 1028 (1940) concerned the rights of the State in land under navigable waters. The Court noted that:

"the lands included 'in lakes, bays, and islands along the Gulf of Mexico within tidewater limits' are exempt from the unappropriated public domain set aside for public school purposes, and all such lands are held in trust by the State for the benefit of all the inhabitants of the State....

[T]he trust so imposed upon the State with respect to its title to such lands necessarily withdraws the same from the operation of the general provisions conferring upon the Land Commissioner the right to contract for the sale or lease of public school land.... Hence, title to such lands may only be acquired, if at all, by grant expressly authorized by the Legislature of the State....

■ Without consideration of the finality of the agreed judgment and the question of res adjudicata, once the State of Texas acquired ownership of the property in question, that property became property that is held in trust for the people of Texas. The "trust" notion illustrates the point we are trying to make; the State of Texas, through the Commissioner, holds legal title to this land in its *governmental* capacity. The beneficial interest of this property is held by the State of Texas in its *sovereign* capacity as guardian of the public domain. This distinction is well worth preserving. *See Harris v. O'Connor*, 185 S.W.2d 993 (Tex.Civ.App.—El Paso 1944, writ ref'd w.o.m.).

■ The duties of the Commissioner, as previously set forth, include the execution and performance of "all acts and other things relating to public land of the state or rights of individuals in public land *which is required by law*." [Emphasis added.] We have found no law which authorizes or requires the Commissioner to surrender title to the property involved in this type of suit. By seeking to wrest ownership from the ministerial representative of the sovereign, appellee is attempting to expand and interfere with the authorized duties of the Commissioner. Thus, this action "is a suit to control the action of the State ... and is therefore in effect a suit against the State, which cannot be maintained, the State not having consented to be sued." *See Short v. W.T. Carter & Brother*, 133 Tex. 202, 126 S.W.2d 953 (1938); *Sadler v. Akin*, 452 S.W.2d 665 (Tex.Civ.App.—Austin 1951), writ ref'd n.r.e.); *Giles v. Poole*, 239 S.W.2d 665 (Tex.Civ.App.—Austin 1951, *dism'd as moot*, 248 S.W.2d 464 (Tex.1952).

The execution of the Agreed Judgment conveyed the land to the State of Texas. This placed title with the Commissioner, the *representative* of the State itself. *See King v. Sheppard*, 157 S.W.2d 682 (Tex. Civ.App.—Austin 1941, writ ref'd w.o.m.). The Court in *King* noted that it was the *State* which had the right and power to acquire and use property in the absence of constitutional restrictions. The State had the power to acquire title to the "Alamo," for instance, and to place it in the custody of the organization known as the Daughters of the Republic of Texas. *See Conley v. Daughters of Republic*, 156 S.W. 197 (Tex.1913). However, the Daughters are not authorized to convey away the "Alamo" without the consent of the sovereign.

Appellee argues that its rights were violated and that the property was wrongfully taken because of the unlawful actions of the Attorney General's office. We recognize that there is case law which holds that a plea to jurisdiction can be denied if State officials acted wrongfully, but those cases are generally concerned with recovery of damages; or cases seeking relief from the wrongful imposition of a statutory burden; or cases complaining of a violation of personal rights. Appellee fails even to make a claim of a present superior right of ownership, as a plaintiff would be required to do in a trespass to try title action. Indeed, it is undisputed that appellee condominium corporation agreed to a final judgment in which this property was conveyed to the State of Texas. Appellee made no claim or mention at that time that the conveyance was made under duress.

The Land Commissioner is not authorized to grant the relief for which appellee prays. By seeking relief from the Commissioner, appellee is improperly attempting to circumvent the sovereign, and thus control and interfere with authorized State actions. The pleas to the jurisdiction filed by the Commissioner and by the State of Texas should have been sustained. The judgment of the trial court is reversed, and judgment is here rendered that the cause of action be dismissed.

REVERSED AND RENDERED.