Lewie BYERS and Forrest
Williams, Appellants,

v.

Jerry PATTERSON, Commissioner of the General Land Office, Texas General Land Office, Chevron USA, Inc., Goldston Oil Corp., Samson Lone Star Limited Partnership, Oxy USA, Inc., Jack Phillips, Gail Mizer, Lee Wallace, Virginia Wallace, Harold Neff & Associates, Inc., Dorice Baker, Bank of America, N.A., Henry Bell, John Allen Bell, Maryhelen Boice, J.R. Brewer, W.M. Burney, Christine R. Butler, James N. Cheatham, William D. Chisum, III, Trustee for Brandon Mathew Chisum and William Dowell Chisum, IV, William D. Chisum, IV, Johnnie Lee Christian, Carey Colley, S.G. Cramer Trust # 1, Benny Duncan, Arlene Duncan, Robert Duncan, Independent Executor of the Estate of Ruth Duncan, Deceased, Larry Elwood, Larry W. Garner, Mary Germann, Joseph A. Harris, Mary Hawkins, Boren Hildebrand, Linda Hoffman, Hopewell Baptist

Church, Hopewell Cemetery Association, IPH Minerals, Ltd., Abron Jernigan, Shirley Jernigan, Oscar Jernigan, Shirley Jernigan, Jimx Inc., Russell Johnson, Scott Kittrell, Shaun Kramer, Bill Lowrimore, Mary Lynn Manley, Margarett Jordan Royalties, Steven H. Massey, Johnny Lee May, Shirley Jernigan, Richard A. McBride, Eddie Wayne McFarland, Charles Poling, Paul Poling, Powers Mineral Group, Inc., Quadrille Ltd., Regions Bank, Trustee, Sam Roosth, Suzanne Smith, Chester Strickler, Marie Strickler, Sunshine Trust, The Taurus Corporation, Betty Turman, Wells Fargo Bank, N.A., Trustee of the Alice M. Good Irrevocable Trust Dated October 21, 1986, Albert C. Williams, Windsor Interests, Dan Chris Woldert, Jr., Thomas Woldert, Lemuel Woods, Martha Watson Yancey, Mary Yancy, Brooks Yates, William Zeigler, Stephen Coleman, John H. Hulsey, James Matthews, Karen Matthews, ExxonMobil Corp., Jerry W. Morris, and Ivy Dickson, Appellees.

No. 12–06–00032–CV.

Court of Appeals of Texas, Tyler.

March 14, 2007.

Andy Tindel, J. Mark Mann & Ben E. Jarvis, for appellants.

Ronald D. Stutes, Jack Jackson, Paul D. Pruitt, James S. Robertson, Jr., Frank M. Newman, Jr., John C. Webb, Jr., J. Don Westbrook, Richard H. Lottmann, Bruce A. Smith, John H. Mcelhaney, Ralph E. Allen, J. Steven Mostyn, Gerald F. D'unger, P. Howard Bailey, Jr., Weldon McFarland, G. Todd Stewart, Thomas A. Zabel, Dan Miller, Liz Bills, Joe H. Foy, Jr., John H. Minton, Jr., for appellees.

Roy McCoy, James Blackburn, Janice Brockett, Amy Glasscock, John Hulsey, Juanita Miller, Jerry W. Morris, Phillip Poling, Victoria Rittman, Michael C. Snyder, pro se.

Panel consisted of WORTHEN, C.J., GRIFFITH, J., and HOYLE, J.

## OPINION

JAMES T. WORTHEN, Chief Justice.

Lewie Byers and Forrest Williams appeal from the trial court's order dismissing for want of jurisdiction their suit appealing two no vacancy rulings by the Commissioner of the General Land Office. In five issues, Appellants contend the amendment to the Texas Constitution upon which the trial court based its order violates their rights under other provisions of the Texas Constitution and under the Fifth and Fourteenth Amendments of the U.S. Constitution. We affirm.

### VACANT LANDS IN TEXAS

When admitted to the Union, Texas retained ownership of all the vacant and unappropriated lands lying within its limits (the public domain). TEX. NAT. RES.CODE ANN. § 11.011 (Vernon 2001). Unappropriated public domain is set apart and granted to the permanent school fund of the state. TEX. EDUC.CODE ANN. § 43.001(a)(2) (Vernon 2006). With certain exceptions not applicable here, vacant and unsurveyed public school land can be located, sold, and leased. TEX. NAT. RES.CODE ANN. § 51.173(a) (Vernon Supp.2006). For a tract of land to be vacant, it must be unsurveyed public land, and it must not be in conflict on the ground with lands previously titled, awarded, or sold. TEX. NAT. RES.CODE ANN. § 51.172(6)(A) (Vernon 2001); *Strong v. Sunray DX Oil Co.,* 448 S.W.2d 728, 743 (Tex.Civ.App.-Corpus Christi 1969, writ ref'd n.r.e.) (op. on reh'g).

The current Commissioner, Jerry Patterson, reported that Texas is made up of 171.4 million acres and estimated that there are between 700,000 and 1.7 million acres of land in Texas which would fit the statutory definition of "vacancy." *A Joint Resolution Proposing a Constitutional Amendment Clearing Land Titles by Relinquishing and Releasing Any State Claim to Sovereign Ownership or Title to Interest in Certain Land:* Hearing on S.J.R. 40, Before the Senate Comm. on Natural Resources, 79th Leg., R.S. (April 5, 2005) (Statement of Commissioner Jerry Patterson, General Land Office of Texas). These vacant and unsurveyed lands are for the most part narrow strips between old original surveys or take in land that is not actually covered by existing grants, patents, awards, or surveys. 3 Fred A. Lange, *Texas Practice: Land Titles and Title Examination,* § 100 (1961).

To purchase or lease a vacancy, a person must follow the procedures specified in the Natural Resources Code, beginning with filing an application. TEX. NAT. RES.CODE ANN. § 51.176 (Vernon Supp.2006). When

a vacancy is alleged, it is necessary to protect the interests of three parties. Lange, *supra,* at § 233. The first party is the State, who owns these lands in trust for the public school children of Texas. The second is the discoverer of these possible state owned vacancies. The third is the landowner or good faith claimant who is in possession of the real property because he honestly believes he is the owner of it. *Id.* The Commissioner will decide whether a vacancy exists. TEX. NAT. RES. CODE ANN. § 51.188 (Vernon Supp.2006). Prior to June 17, 2005, applicants could appeal a finding by the Commissioner that no vacancy exists. Act of May 28, 1993, 73rd Leg., R.S., ch. 992, § 1, 1993 Tex. Gen. Laws 4317, 4323 (amended 1995, 2001, 2005) (current version at TEX. NAT. RES.CODE ANN. § 51.189 (Vernon Supp. 2006)). The appeal was to a district court in the county where any part of the land at issue was located. *Id.*

### APPELLANTS' VACANCY CLAIMS

Appellants each separately filed an application with the Commissioner to lease or purchase from the State of Texas parts of 992 acres in Smith County. They asserted the land was vacant because of errors in surveys done in 1835 by William Brookfield when he established the boundaries of the Four–League Grant, also known as the Frost Thorn Surveys. Between them, Commissioners David Dewhurst and Jerry Patterson issued findings of fact and conclusions of law that referenced thirty-one later surveys prepared in the nineteenth century. They determined through these surveys and the evidence presented by Appellants that no vacancy existed in the land at issue. Both applications were denied.[1]

Appellants separately appealed to the district court, and the cases were consolidated. Initially, the defendants were Land Commissioner Jerry Patterson, Texas General Land Office, Texaco Exploration & Production, Inc.,[2] and Goldston Oil Company. The district court abated the proceeding, and 133 individuals and entities made appearances as good faith claimants asserting a real property interest in the land at issue. While the appeal was still pending in the district court, the people of Texas amended their constitution by adding Article VII, Section 2C, which provides that "the State of Texas relinquishes and releases any claim of sovereign ownership or title to an interest in and to [the land at issue], including mineral rights. . . ." TEX. CONST. art. VII, § 2C. Chevron then filed a plea to the jurisdiction, which some of the other defendants either joined in or adopted. The district court, relying on this constitutional amendment, entered an order granting the plea to the jurisdiction and dismissing Appellants' claims with prejudice. Appellants timely filed this appeal.

### STANDARD OF REVIEW

A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat the plaintiffs' claims without regard to whether the claims asserted have merit. *Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 554 (Tex.2000). A plea to the jurisdiction

---

**1.** Had the Commissioner ruled the land was vacant, Appellants would have been entitled to a perpetual nonparticipating royalty interest of not less than 1/32 or more than 1/16 of all oil, gas, and sulphur and not less than one percent or more than two percent of the value of all geothermal resources and all other minerals produced from the land. Act of May 28, 1993, 73rd Leg., R.S., ch. 991, § 1, 1993 Tex. Gen. Laws 4317, 4326 (amended 2001, 2005) (current version at TEX. NAT. RES.CODE ANN. § 51.195(b) (Vernon Supp.2006)).

**2.** Chevron USA, Inc. is the successor in interest to Texaco Exploration & Production, Inc.

contests the trial court's authority to determine the subject matter of the cause of action. *Cornyn v. County of Hill,* 10 S.W.3d 424, 427 (Tex.App.-Waco 2000, no pet.). If the evidence is undisputed or does not raise a fact issue on the question of jurisdiction, then the trial court rules on the plea to the jurisdiction as a matter of law. *Texas Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 226 (Tex.2004). Whether a court has subject matter jurisdiction is a question of law, which we review de novo. *Id.*

### THE POWER OF THE PEOPLE

In their first issue, Appellants assert that the trial court erred in granting the plea to the jurisdiction because the constitutional amendment the order is based on, Article VII, Section 2C, destroys their right to pursue their vacancy applications in violation of the constitutional ban on retroactive laws contained in Article I, Section 16 of the Texas Constitution. They further argue that the amendment violates Article I, Section 29, which limits the power of the government and makes void any law that is contrary to the Texas Bill of Rights. In their second issue, Appellants contend that Article VII, Section 2C is a local or special law in violation of Article III, Section 56 of the Texas Constitution.

#### *Sovereignty Over the Law*

A fundamental concept of our government is that the people are sovereign and possess all of the powers of sovereignty. Article I, Section 2 of the Texas Constitution makes this clear:

All political power is inherent in the people, and all free governments are founded on their authority, and instituted for their benefit. The faith of the people of Texas stands pledged to the preservation of a republican form of government, and, subject to this limitation only, they have at all times the inalienable right to alter, reform or abolish their government in such manner as they may think expedient.

TEX. CONST. art. I, § 2. The people have sovereign rights and privileges that are beyond the power of government. *See* TEX. CONST. art. I, § 2 interp. commentary (Vernon 1997). The government is merely the agent of the people. *See Express Printing Co. v. Copeland,* 64 Tex. 354, 358 (1885).

In their capacity as sovereign, the people of Texas have the sole power to amend or change any provision of the constitution. *Oakley v. State,* 830 S.W.2d 107, 109 (Tex.Crim.App.1992). In exercising this power, "[t]hey can amend the Constitution in any particular that they desire[,]" *Stephens v. State,* 138 Tex.Crim. 43, 45, 133 S.W.2d 130, 131 (1939), subject to the U.S. Constitution and their mandate to preserve the republican form of government. TEX. CONST. art. I, §§ 1, 2. This principle applies even when a statute enacted for the same purpose would be unconstitutional. *See Oakley,* 830 S.W.2d at 109–10 (constitutional amendment permitting parole instruction upheld although statute mandating parole instruction was unconstitutional as violating due course of law provisions of Article I, sections 13 and 19 of Texas Constitution).

The constitution of Texas is the fundamental law of the state, "the supreme law of the land." *Oakley,* 830 S.W.2d at 109. When the people of Texas adopted Article VII, Section 2C in 2005, it became as much a part of the Texas Constitution as if it had been adopted by the people of Texas in 1876. *See id.* at 109–10. Assuming, however, that Article VII, Section 2C conflicts with Article I, Section 16 as Appellants suggest, the amendment still became part of the fundamental or organic law of the State of Texas. *See id.* To

resolve any inconsistency between an amended provision and the constitution as originally adopted in 1876, two rules of constitutional construction assist us in determining which controls: (1) specific provisions control general provisions and (2) the provision adopted later in time will be given controlling effect, it being the last expression of the sovereign will of the people. *Id.* at 110. Article VII, Section 2C would prevail under both rules.

■ Appellants further contend that Article VII, Section 2C impermissibly contravenes Article I, Section 29. Article I, Section 29 states that "everything in [the Texas] 'Bill of Rights' is excepted out of the general powers of government, and shall forever remain inviolate, and all laws contrary thereto, or to the following provisions, shall be void." TEX. CONST. art. I, § 29. Appellants assert that this language prohibits the people of Texas from adopting a constitutional amendment that conflicts with the Texas Bill of Rights. The first clause of Section 29 establishes that its purpose is to "guard against transgressions of the high powers" delegated to the state government by the Texas Constitution. *Republican Party of Tex. v. Dietz,* 940 S.W.2d 86, 89 (Tex.1997) (orig. proceeding). It logically follows that only the state government can transgress the "high powers" delegated to it. Therefore, it is only the government that is constrained by Article I, Section 29. *See id.* Moreover, Article I, Section 29 does not make Article I supreme over other specific constitutional provisions and does not mandate that the provisions in Article I of the Texas Constitution supersede all other constitutional provisions. *Oakley,* 830 S.W.2d at 111. Article I, Section 29 does not limit the people's power to amend their constitution. *See id.*

### Sovereignty Over the Land

■ In adopting Article VII, Section 2C, the people exercised another of their sovereign roles. The people of Texas own the public domain of Texas. *See Hamilton v. State,* 152 S.W. 1117, 1120 (Tex.Civ. App.-Austin 1912, writ ref'd). Absent a delegation of power, only the people, as direct representatives of sovereignty, may surrender the State's ownership of the public domain of Texas. *See State v. Executive Condos., Inc.,* 673 S.W.2d 330, 332 (Tex.App.-Corpus Christi 1984, writ ref'd n.r.e.).

■ In the 1845 Annexation Treaty by which Texas became the twenty-eighth state of the United States, the people of Texas retained their public domain. *See* TEX. NAT. RES.CODE ANN. § 11.011. There have always existed with the people of this State three prominent objects which, through their constitutions and laws, they have worked to accomplish by means of the public domain. *Galveston, Harrisburg & San Antonio Ry. Co. v. State,* 77 Tex. 367, 382, 12 S.W. 988, 991 (1889). These objects were to secure immigration, promote education, and encourage the construction of railroads. *Id.* In their 1876 Texas Constitution, the people established a "perpetual" school fund that included one half of the State's public domain. *See* TEX. CONST. art. VII, § 2. The constitution also provided that the "permanent" school fund included all land appropriated for public schools by the constitution or other law, all other properties belonging to the permanent school fund, and all revenues derived from the land. *See* TEX. CONST. art. VII, § 5(a); *Hogue v. Baker,* 92 Tex. 58, 63, 45 S.W. 1004, 1005 (1898) (orig. proceeding). In 1898, the Texas Supreme Court declared that the only public domain remaining in Texas was dedicated to education. *See Hogue,* 92 Tex. at 65, 45 S.W. at 1007. Presently, the permanent school fund in-

cludes all land appropriated for the public schools by the constitution and the laws of Texas and all unappropriated public domain remaining in the state. *See* Tex. Educ.Code § 43.001(a)(1)-(2). School lands are part of the public domain of the state that belong to the people as fully as they did before they were declared public school lands. *See Smissen v. State*, 71 Tex. 222, 231, 9 S.W. 112, 115 (1888). The procedures for locating, selling, and leasing vacant and unsurveyed public school land are prescribed by the Texas Natural Resources Code. Neither the legislature nor the Commissioner is authorized by the Texas Constitution or other law to relinquish any claim of sovereign ownership or title the State may have in lands alleged to be vacant, but declared not vacant by the Commissioner. Therefore, only the people have the authority to take such action. *See Executive Condos., Inc.*, 673 S.W.2d at 332.

### Local or Special Law

▮▮▮▮ Article III, Section 56 states that the legislature shall not enact a local or special law. Tex. Const. art. III, § 56. By its language, this section is a limitation upon the legislature as the representative of the people. It does not limit the people's power to amend their constitution. Further, when the people act, they are establishing fundamental or organic law of the State. *Oakley*, 830 S.W.2d at 109.

### Conclusion

The people of Texas are sovereign in determining the fundamental law of the state. *Id.* They are also sovereign in determining the real property that makes up the public domain of Texas. *See Smissen*,

71 Tex. at 232, 9 S.W. at 115. The people of Texas exercised both of these sovereign roles in adopting Article VII, Section 2C. Neither Article I, Section 16 nor Article I, Section 29 limits the people when they are acting in either of these roles. By its own language, Article III, Section 56 does not apply to the people in their role of adopting the fundamental law of the state or in their role as keepers of the public domain. Therefore, Article VII, Section 2C does not violate these constitutional provisions. We hold that the people of Texas acted within their authority in these two sovereign roles when they adopted Article VII, Section 2C of the Texas Constitution. We overrule Appellants' issues one and two.

### FIFTH AMENDMENT

▮▮▮ In their fourth issue, Appellants contend that the trial court erred in granting the plea to the jurisdiction because application of Article VII, Section 2C constitutes a taking of property without just compensation in violation of the Fifth Amendment to the United States Constitution.

▮▮▮ The Takings Clause of the Fifth Amendment provides that private property shall not be taken for public use without just compensation. U.S. Const. amend. V. In reviewing a takings claim, we first decide whether an appellant has a property interest in the subject of the alleged taking.[3] *Adams v. United States*, 391 F.3d 1212, 1218–19 (Fed.Cir.2004), *cert. denied*, —— U.S. ——, 126 S.Ct. 330, 163 L.Ed.2d 44 (2005). Once we have determined that such a property interest exists, we then decide whether a taking occurred. *Id.*

---

**3.** Property interests are not created by the Constitution. *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law. *Id.*

Appellants assert that once they complied with the administrative requirements associated with filing a vacancy application, they acquired a constitutionally protected property interest in maintaining a cause of action to establish their vacancies and purchasing or leasing the vacant land. At the time Article VII, Section 2C was adopted, the administrative phase of the vacancy process was complete. Therefore, Appellants were not deprived of a ruling on their vacancy applications. Instead they received unfavorable rulings from the Commissioners for which judicial review became unavailable through the application of the amendment. Thus, the substance of Appellants' argument is that they had a constitutionally protected right to judicial review as provided by the Texas Natural Resources Code at the time they filed the appeals.

 It is a fundamental proposition that no one has a vested right in the continuance of present laws in relation to a particular subject. *Subaru of Am., Inc. v. David McDavid Nissan, Inc.,* 84 S.W.3d 212, 219 (Tex.2002); *see also Sw. Bell Tel. Co. v. City of Kountze,* 543 S.W.2d 871, 873–74 (Tex.Civ.App.-Beaumont 1976, no writ) (holding that newly enacted statute granted agency exclusive jurisdiction of claim then pending on interlocutory appeal, thereby depriving trial court and appellate court of jurisdiction). Stated another way, no one has a property right in a mere rule of law. *Subaru of Am., Inc.,* 84 S.W.3d at 219. Appellants' right to judicial review in this case was contingent upon (1) the continuation of existing statutory law relating to their vacancy claims and (2) the decision of the people of Texas not to adopt a constitutional amendment relinquishing their title, if any, to the land at issue. Therefore, judicial review of the Commissioners' rulings was at best a mere expectation based upon an anticipated continuance of present law. *See Ex parte Abell,* 613 S.W.2d 255, 262 (Tex.1981). That expectation does not constitute a constitutionally protected property right. *See Subaru of Am., Inc.,* 84 S.W.3d at 219; *Sw. Bell Tel.,* 543 S.W.2d at 875.

 Had Appellants successfully asserted their vacancy claims, they would have acquired purchase or lease rights to the subject land, as well as a nonparticipating royalty interest and a percentage of the geothermal resources, subject to certain statutory prerequisites. Prior to favorable rulings on their applications and compliance with any other applicable law, these interests were merely contingent and therefore not constitutionally protected property interests. To constitute a property interest that implicates the Takings Clause, a person must have more than a desire for the interest or a unilateral expectation of it. *See Roth,* 408 U.S. at 577, 92 S.Ct. at 2709.

Appellants did not acquire a property interest protected by the Takings Clause of the Fifth Amendment when they complied with the administrative requirements for filing a vacancy application. Therefore, we need not address whether a taking occurred. We hold that the Takings Clause of the Fifth Amendment to the United States Constitution was not implicated by the people when they adopted Article VII, Section 2C of the Texas Constitution. We overrule Appellants' issue four.

### FOURTEENTH AMENDMENT

In their third issue, Appellants contend that the trial court erred in granting the plea to the jurisdiction because Article VII, Section 2C violates their rights to substantive due process, equal protection, and procedural due process protected by the Fourteenth Amendment to the United States Constitution. They argue that they

had a constitutionally protected interest in their vacancy applications and the associated legal rights and benefits, including the right to appeal the no vacancy determinations. They contend they were singled out for different treatment from other vacancy applicants and there is no rational basis for the differential treatment. Further, they argue that Article VII, Section 2C allowed Appellees to change the facts in mid-litigation, improperly denying Appellants of the right to use judicial procedures.

### Substantive Due Process and Equal Protection

A violation of substantive due process occurs only when the government deprives individuals of constitutionally protected rights by an arbitrary use of its power. *Simi Inv. Co. v. Harris County,* 236 F.3d 240, 249 (5th Cir.2000). To prevail on a substantive due process claim, the claimant must establish that it held a constitutionally protected property right to which the Fourteenth Amendment's due process protection applies. *Id.* at 249–50. The court must then review the government's actions against the deferential "rational basis" test that governs substantive due process claims. *Id.* at 249. Thus, Appellants must show that the people's adoption of Article VII, Section 2C was not rationally related to furthering a legitimate state interest. *See Mikeska v. City of Galveston,* 451 F.3d 376, 379 (5th Cir. 2006). If the question is at least debatable, there is no substantive due process violation. *Energy Mgmt. Corp. v. City of Shreveport,* 467 F.3d 471, 481 (5th Cir. 2006).

The Equal Protection Clause prohibits differential treatment of persons similarly situated without a rational basis. *See Mikeska,* 451 F.3d at 381. When no suspect classification or fundamental right is implicated, differential treatment of similarly situated individuals is permissible as long as it is rationally related to a legitimate state interest. *Tigner v. Cockrell,* 264 F.3d 521, 526 (5th Cir.2001). To establish an equal protection violation, Appellants must show that they have been treated differently and that there is no rational basis for the difference in treatment. *See Village of Willowbrook v. Olech,* 528 U.S. 562, 564, 120 S.Ct. 1073, 1074, 145 L.Ed.2d 1060 (2000).

Appellants have not presented any evidence that their circumstances are different from those in which constitutional amendments previously have been adopted. Therefore, we hold that Article VII, Section 2C does not violate Appellants' right to equal protection of the laws.

In addressing Appellants' substantive due process claim, our review focuses on the rational basis relied on by the people of Texas in adopting Article VII, Section 2C of the Texas Constitution because that amendment had the effect of ending Appellants' appeal of the Commissioners' no vacancy determinations. The basic ideal of American social structure was a country of free citizens as smallholders living on their own bits of land. Lawrence M. Friedman, *A History of American Law* 232 (2d ed.1985). It was also the desire of Texas throughout the nineteenth century to encourage families to settle in the state by giving its public lands away freely. *See* T.R. Fehrenbach, *Lone Star: A History of Texas and the Texans* 282 (1983). The part of Smith County where the land at issue is located was first surveyed and settled in 1835. The individuals who believe they are successors in interest of title descending from the sovereign have an interest in clearing their real property titles of any irregularity. The people of Texas also have a legitimate interest in maintaining the integrity of real property

titles in the state. Anything less would not be keeping faith with the foundational purpose of land ownership established in both the United States and Texas, i.e., the American Dream.

Paul Pruitt, executive of a land title company headquartered in Dallas, testified in the trial court that his company and other named title companies would not insure the title to any of the real property at issue, or contiguous tracts, while the vacancy claims are pending. He further explained that the property was unmarketable because of the uncertainty of the title created by Appellants' vacancy claims. He testified that no money would be loaned by any financial institution for home mortgages, home improvements, or development of the property at issue.

Disruptions in the lives of the individuals and entities who own property interests in this acreage are not beneficial for an economically and socially healthy society. Amending the constitution to allow the individuals and entities in this case to have clear titles to their real property and to take part in the economic life of their community is a rational decision the people of Texas logically made. We hold that the people's adoption of Article VII, Section 2C of the Texas Constitution was rationally related to furthering a legitimate state interest. Therefore, Article VII, Section 2C does not violate Appellants' right to substantive due process.

### Procedural Due Process

■ Procedural due process ensures that government decisions will be made with sufficient procedural safeguards. *See Mathews v. Eldridge,* 424 U.S. 319, 332, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976). Procedural due process requires an opportunity granted at a meaningful time in a meaningful manner for a hearing appropriate to the nature of the case. *Boddie v. Connecticut,* 401 U.S. 371,

378, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971). Due process is not a technical conception with a fixed content unrelated to time, place, and circumstances. *Mathews,* 424 U.S. at 334, 96 S.Ct. at 902. Due process is flexible and calls for such procedural protections as the particular situation demands. *Id.* In determining whether procedural due process has been denied, substance rather than form is to be considered. *See Chicago, Burlington & Quincy Ry. Co. v. Chicago,* 166 U.S. 226, 235, 17 S.Ct. 581, 584, 41 L.Ed. 979 (1897).

■ The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. *Roth,* 408 U.S. at 569, 92 S.Ct. at 2705. A property interest that is protected by due process arises only when an individual has a legitimate claim of entitlement and not merely a unilateral expectation. *Id.,* 408 U.S. at 577, 92 S.Ct. at 2709. In addressing Appellants' fourth issue, we considered and rejected Appellants' contention that, for purposes of the Takings Clause, they acquired a constitutionally protected property interest in their vacancy claims. Based upon the same reasoning, we reach the same conclusion for purposes of Appellants' procedural due process claim. Because Appellants did not acquire a constitutionally protected property interest through their vacancy applications, they cannot show that the trial court's application of Article VII, Section 2C constituted a denial of procedural due process.

■ Moreover, Appellants were afforded ample due process. Each appellant had the opportunity to present his application to the General Land Office. Based on a review of the appointed surveyor's survey, objections to the survey, Land Office staff recommendations, and public records of

the Land Office, the Commissioner made findings of fact and conclusions of law when he denied Byers's application. Byers appealed the decision to the district court and successfully argued that the case should be remanded to the Land Office for consideration of a second survey, one prepared at Byers's request. The Commissioner reconsidered the application with the benefit of both surveys and again concluded that no vacancy existed. In response to Williams's application, the Land Office vacancy panel heard evidence and public comment in a public hearing, reviewed materials on file, Williams's application, and other submissions of Williams and opponents of the application, and visited the site of the alleged vacancy. The panel submitted extensive findings of fact and conclusions of law, together with analysis of the issues and a recommendation to the Commissioner that a final order of "Not Vacant Land" be issued. The Commissioner reviewed the records and evidence, adopted the panel's findings and conclusions, and issued a final order of "Not Vacant Land" in response to Williams's application. Thus, the record shows that Appellants received procedural due process before the Commissioner entered no vacancy rulings. Appellants also had the opportunity to participate in the constitutional amendment process and make their interests and opinions known. Appellants were thus afforded meaningful opportunities to persuade the people of Texas to reject this constitutional amendment. We hold that Appellants' procedural due process rights under the Fourteenth Amendment were not violated by the people when, by amendment to the Texas Constitution, they made the final decision in Appellants' vacancy claim rather than leaving it up to the courts. We overrule Appellants' issue three.

### CONCLUSION

Through Article VII, Section 2C, the people of Texas relinquished any rights they had to the land at issue. That amendment does not violate Article I, Sections 16 and 29, or Article III, Section 56 of the Texas Constitution. Nor does it violate the Fifth or Fourteenth Amendments to the United States Constitution. Appellants have not shown that Article VII, Section 2C was an improper exercise of the power of the people of Texas to amend their constitution. Because the State of Texas does not possess title to the land at issue, it is not subject to the vacancy statutes. It follows that the trial court cannot grant any relief to Appellants and it properly granted the plea to the jurisdiction. We need not reach Appellants' fifth issue because it is not necessary to the disposition of this appeal. *See* TEX.R.APP. P. 47.1.

We *affirm* the trial court's order granting the plea to the jurisdiction and dismissing the cause with prejudice.